THE DEPARTMENT OF CONSERVATION *et al.*, Plaintiffs-Appellants, *v.*
THE BALTIMORE AND OHIO RAILROAD COMPANY, Defendant-Appellee.

Fifth District   No. 80-541

Opinion filed January 28, 1982.

Tyrone C. Fahner, Attorney General, of Chicago (Hercules F. Bolos and Anita Johnson, Assistant Attorneys General, of counsel), for appellant Illinois Commerce Commission.

Tyrone C. Fahner, Attorney General, of Chicago (Merle C. Bassett, Assistant Attorney General, of counsel), for appellant Department of Conservation.

Richard F. Nash, of Gundlach, Lee, Eggmann, Boyle & Roessler, of Belleville, for appellee.

JUSTICE WELCH delivered the opinion of the court:

At issue in this case is the perfection of an appeal to the circuit court from an order of the Illinois Commerce Commission (ICC). On April 4, 1977, the Illinois Department of Conservation (the Department) filed a petition with the ICC to condemn for an archaeological site certain St. Clair County land owned by the Baltimore and Ohio Railroad (B & O). Following hearings and other proceedings, the ICC granted the Department permission to condemn the land on March 21, 1979. The B & O applied for rehearing on April 20, 1979, and this was denied on May 9, 1979. ICC staff prepared a "Certificate of Commission Action" which was dated the following day. According to the certificate of the ICC's chief clerk, the "Certificate of Commission Action" was mailed on May 10, 1979. It was received at B & O offices on May 14.

On June 8, 1979, B & O's counsel placed in a mailbox in Belleville, Illinois, several copies of a notice of appeal from the decision. That notice of appeal was captioned "The Department of Conservation, State of Illinois v. The Baltimore and Ohio Railroad Co.," as the case had been titled before the ICC. It was received by the ICC in Springfield on June 11, and another copy was file-stamped by the clerk of the circuit court of St. Clair County on June 12. On June 13, the secretary of the ICC wrote to the circuit clerk to acknowledge receipt of the notice of appeal and to forward copies of the final ICC order.

The ICC filed its entry of appearance on October 14, 1979. It did not contest the timeliness of filing the notice of appeal or the adequacy of its caption. On January 7, 1980, the Department filed its first motion in the circuit court, being a motion to dismiss the appeal because no record had been filed in the circuit court. The ICC corrected this omission by filing the record on January 17. Both the Department's motion to dismiss and the ICC's letter which accompanied the record referred to this case as "The Department of Conservation v. The Baltimore and Ohio Railroad Co."

The ICC filed its motion to dismiss the appeal on March 20, 1980. It was captioned "The Baltimore and Ohio Railroad Co. v. Illinois Commerce Commission," and it alleged that the B & O's notice of appeal was not timely filed or properly captioned. The motion was denied on September 10, 1980, and the Department and ICC requested the trial court to reconsider its order. The court allowed the original order to stand, but granted the agencies leave to file an application for an interlocutory appeal to this court under Supreme Court Rule 308 (Ill. Rev. Stat. 1979, ch. 110A, par. 308). That application, which this court has allowed, limits this appeal to the following questions:

(1) Was the notice of appeal filed by the B & O with the Twentieth

Judicial Circuit, St. Clair County, Illinois on June 12, 1979 a timely filing?

(2) Was the failure to designate the ICC a party to the appeal a failure that renders the appeal fatally defective, and subject to dismissal?

The B & O claims that this discretionary appeal should not be entertained at all. It notes that Supreme Court Rule 308(a) refers to appeals from a trial court to "the Appellate Court," and that in reviewing ICC decisions, the trial court stands as an appellate court. According to the B & O, the Public Utilities Act (Ill. Rev. Stat. 1979, ch. 111 2/3, par. 1 *et seq.*), under which this appeal arises, requires the circuit court to retain jurisdiction over such appeals until the entire case is decided. Part of section 68 of the Act (Ill. Rev. Stat. 1979, ch. 111 2/3, par. 72) states:

"The Court first acquiring jurisdiction of any appeal from any rule, regulation, order or decision shall have and retain jurisdiction of such appeal and of all further appeals from the same rule, regulation, order or decision until such appeal is disposed of in such circuit court."

The B & O also points to section 69 of the Act (Ill. Rev. Stat. 1979, ch. 111 2/3, par. 73), under which "[a]ppeals from all final orders and judgments entered by the circuit court in review of rules, regulations, orders or decisions of the Commission, may be taken as in other civil cases."

Although we can find no case authority precisely on point, we do not believe that the sections of the Public Utilities Act quoted by the B & O were intended to limit our discretion under Rule 308. For example, section 68 requires the circuit court to retain jurisdiction of an appeal until the appeal "is disposed of" in that court. This clause, which was designed to prevent conflicting results in different circuit courts (*Illinois Bell Telephone Co. v. Illinois Commerce Com.* (1953), 414 Ill. 275, 111 N.E.2d 329), does not define the "disposition" of an appeal in the circuit court. Given that section 68 requires the appeal to be tried "according to the rules governing other civil cases, so far as the same are applicable," it is plausible that a trial court may "dispose of" the appeal by certifying appropriate questions for appellate review instead of proceeding to a final judgment. Had the drafters of the Public Utilities Act intended the circuit court to march uninterrupted to final judgment, it seems likely that they would have referred to the term "final judgment" instead of using the phrase "disposed of." In one common use of the word "dispose," an appeal to the circuit court would be "disposed of" by certification of a question for an interlocutory appeal because the circuit court would thereby have placed the case in the hands of another. In another sense, an appeal could be "disposed of" by the appellate court if it would find, for

example, that the circuit court had not acquired jurisdiction over the original appeal. The appeal would be "disposed of" in the second instance, because the case would have come to a conclusion. (See Webster's Third New International Dictionary 654 (1976) ("dispose of").) Because of the different meanings of the phrase "disposed of," we cannot say that an interlocutory appeal is an unauthorized procedure under the Public Utilities Act.

Moreover, even if the words "disposed of" should be read to mean "a final judgment in the circuit court," section 68 does not expressly require that only the circuit court should participate in rendering a decision on the appeal. Under that provision, the circuit court is to "have and retain jurisdiction" of the appeal. But, since Rule 308 does not automatically stay circuit court proceedings if an application for permission to appeal is granted (Ill. Rev. Stat. 1979, ch. 110A, par. 308(e)), there is nothing to prevent the trial court from retaining control over the case while the appellate court resolves the questions presented to it. All in all, section 68 is susceptible of several interpretations, and it is not sufficient authority to negate the strong discretionary powers vested in this court by Rule 308.

Additionally, section 69 of the Act, in allowing appeals from final orders and judgments to be "taken as in other civil cases," does not prohibit appeals to be taken from nonfinal orders under the procedure established in Rule 308. However, even if sections 68 and 69 of the Act could be seen as a bar to interlocutory appeals, this would not be persuasive because Rule 308 does not exempt Public Utilities Act proceedings from its scope and, under Supreme Court Rule 1, "[t]he [supreme court] rules on appeals supersede statutory provisions inconsistent with the rules and govern all appeals" (Ill. Rev. Stat. 1979, ch. 110A, par. 1).

■■ The B & O argues that, even on its own terms, Rule 308 does not allow interlocutory appeals in cases of review of ICC orders. Admittedly, the Rule refers to appeals from "the trial court" to "the Appellate Court," while several other supreme court rules governing appeals mention "the circuit court" instead of or in addition to "the trial court." (Ill. Rev. Stat. 1979, ch. 110A, pars. 301, 302, 303, 306.) But, it would be simplistic to conclude that because the trial court acts in a reviewing capacity, it is therefore not a "trial court," but an "appellate court" and that Rule 308 no longer applies. To accept this argument would ignore that Rule 308 refers to "the Appellate Court," which is certainly this court and not simply a circuit court sitting in a reviewing capacity, whether it be under the Public Utilities Act, Administrative Review Act or other statute. Moreover, Rule 308 is classified in the supreme court rules under article III, "Civil Appeals Rules," and part A, "Appeals from the Circuit Court." In many of the rules in this part, the terms "circuit court" and "trial court" are used interchangeably, and in this type of proceeding, that interpretation seems

necessary, because there has been no "trial court" involved if one does not consider the circuit court to be "the trial court." If we would read "trial court" to exclude a circuit court reviewing an administrative decision in this case, that interpretation would be required in every rule in article III, part A, where that term is used. To engage in strained semantics to reach a result which would riddle an important portion of the supreme court rules with doubt is unwarranted. It is obvious to us that Rule 308 applies to appeals to this court from a circuit court reviewing ICC orders under the Public Utilities Act, and we so hold.

Turning to the merits of the appeal, it is apparent that they are not complex. The Department and ICC first claim that the B & O's appeal was not timely filed. According to section 68 of the Public Utilities Act, an appeal may be taken from a decision of the ICC within 30 days of the service of that decision. The date of mailing the decision is the date of service. (Ill. Rev. Stat. 1979, ch. 111 2/3, par. 70.) In this case, the "Certificate of Commission Action" was dated May 10, 1979, and the ICC's chief clerk certified that it was mailed that day. Because June 9, 1979, was a Saturday, June 11 was the 30th day following the service of the ICC's order. Ill. Rev. Stat. 1979, ch. 1, par. 1012.

The Department and ICC argue that, even though the notice of appeal was received by the ICC on June 11, it was not filed in the circuit court until June 12. Since the affidavit of the B & O's counsel stated that both documents were mailed on June 8, we must hold that (1) the date of mailing these documents is not the date of filing, or, (2) the affidavit was not competent evidence of mailing, and that, (3) the notice must be filed in the circuit court within 30 days of service of the ICC's decision, in order to dismiss the B & O's appeal to the circuit court as untimely. We cannot accept the position of the agencies on the first two of these propositions, and therefore we do not need to discuss the third.

■■ Under section 1.25 of "An Act to revise the law in relation to the construction of statutes" (Ill. Rev. Stat. 1979, ch. 1, par. 1026), the date of mailing "any writing of any kind or description required or authorized to be filed with * * * the State or any political subdivision thereof" shall be the date of its filing, unless an act otherwise provides. The Public Utilities Act does not contain a contrary provision, and, indeed, the fact that service of ICC orders is complete when mailed suggests that the application of section 1.25 would further consistency in the Act. In appeals to the circuit court from ICC orders, then, the date of mailing documents required by section 68 of the Public Utilities Act shall be deemed the date of their filing.

The proof of that date in this case is the affidavit of the B & O's counsel. According to paragraph (1) of section 1.25, the date of mailing is "the date shown by the post office cancellation mark stamped upon the

envelope or other wrapper containing it." If the document is not received by the State, or if it is received without a cancellation mark or with an illegible or erroneous cancellation mark, then the sender may establish the date of mailing by "competent evidence." (Ill. Rev. Stat. 1979, ch. 1, par. 1026(2).) The statute does not say what evidence is considered competent.

As can be seen, this case falls into a gap in section 1.25, because the notice of appeal was received by the circuit clerk but no envelope, or evidence concerning the condition of its postmark, was introduced into the proceedings below. In our opinion, this omission is a gaping hole in the statute, because, given the volume of business in many State agencies, the retention of envelopes is usually a low priority. The purpose of that portion of the statute which allows alternate proof of mailing is to fill a vacuum which is created when a letter is lost, or when the postmark is absent, obscured or incorrect. Because the same vacuum also exists if the envelope is not introduced into evidence, common sense requires alternate proof in that situation as well.

■■ Counsel for the B & O offered his affidavit in the court below to prove the date of mailing. As the B & O notes in its brief, Supreme Court Rule 373 (Ill. Rev. Stat. 1979, ch. 110A, par. 373), as amended January 5, 1981, now allows this as competent evidence of the date of filing papers in a reviewing court. We believe that this is one type of "competent evidence" authorized as alternate proof by section 1.25, and the B & O has therefore established that both copies of its notice of appeal were timely filed.

Counsel for both sides have addressed the issue of whether section 68 requires an appellant to serve a copy of his notice of appeal with the clerk of the circuit court within 30 days of service of the ICC order. The First District so stated in *Hoffman v. Illinois Commerce Com.* (1978), 62 Ill. App. 3d 85, 379 N.E.2d 42. It appears to us that the dissent expresses a more realistic reading of that section, but, since this appeal to the circuit court is timely even under the standard of *Hoffman*, we will not discuss that issue here.

■■ Finally, the Department and ICC urge that the B & O's omission of the ICC in the caption of its notice of appeal deprived the circuit court of jurisdiction over the appeal. The B & O replies that both the Department and the ICC had participated in the appeal for months before they objected to the caption of the notice of appeal, and both agencies adopted the allegedly erroneous caption and used it on several motions made in the circuit court. Since the only jurisdictional step in the perfection of an appeal from the ICC is the timely filing of a notice of appeal (*Illinois Telephone Association v. Illinois Commerce Com.* (1978), 57 Ill. App. 3d 968, 373 N.E.2d 676), the facts mentioned by the B & O are significant. The Department and ICC have waived any defects in the caption of the

notice of appeal by not objecting to it and by adopting the caption on their motions.

Because this appeal to the circuit court was timely, and because any defects in the caption of the notice of appeal have been waived, the circuit court has jurisdiction to hear this appeal. We therefore affirm the decision of the Circuit Court of St. Clair County and remand this cause for further proceedings.

Affirmed and remanded.

JONES and KASSERMAN, JJ., concur.