(Nos. 66381, 66544 cons.—

THE HARRISBURG-RALEIGH AIRPORT AUTHOR-
ITY, Appellee, v. THE DEPARTMENT OF REVE-
NUE, Appellant.—THE FOX VALLEY AIRPORT
AUTHORITY, Appellee, v. THE DEPARTMENT OF
REVENUE, Appellant.

*Opinion filed January 18, 1989.*

CALVO, J., took no part.

Neil F. Hartigan, Attorney General, of Springfield (Shawn W. Denney and Robert J. Ruiz, Solicitors General, and Rosalyn B. Kaplan, Assistant Attorney General, of Chicago, of counsel), for appellant.

Charles M. Ferguson, of Harrisburg, and Hinshaw, Culbertson, Moelmann, Hoban & Fuller, of Chicago (Bruce L. Carmen, of counsel), and John H. Brechin, of Oak Brook, for appellee.

Neil F. Hartigan, Attorney General, of Springfield (Shawn W. Denney and Robert J. Ruiz, Solicitors General, and Rosalyn B. Kaplan and Ann Plunkett-Sheldon, Assistant Attorneys General, of Chicago, of counsel), for appellant.

Hinshaw, Culbertson, Moelmann, Hoban & Fuller, of Chicago (James W. Keeling and Bruce L. Carmen, of counsel), John H. Brechin, of Oak Brook, and Charles M. Ferguson, of Harrisburg, for appellee.

JUSTICE CLARK delivered the opinion of the court:

These consolidated cases raise the question of whether certain real estate leased to private individuals by an airport authority is exempt from taxation as property belonging to an airport authority and "used for Airport Authority purposes" (Ill. Rev. Stat. 1985, ch. 120, par. 500.20). The property in question in No. 66381 con-

sists of hangars rented by the Harrisburg-Raleigh Airport Authority to private individuals for storage of their private aircraft. The property in question in No. 66544, owned by the Fox Valley Airport Authority, consists not only of hangars but also various other facilities for the private storage or maintenance of aircraft, as well as two additional parcels of land, one leased to a private individual as a residence and the second leased as a farm, which are being held for future expansion of the airport. No. 66544 also raises the question of whether a notice of appeal from a judgment of the circuit court is timely filed if it is mailed within the 30-day period for filing a timely notice but is not received by the clerk of the circuit court until after the period has expired. For the purposes of convenience, we will treat each case separately.

## HARRISBURG-RALEIGH AIRPORT AUTHORITY

In No. 66381, the appellant, the Illinois Department of Revenue, denied tax-exempt status to certain property owned by the appellee, the Harrisburg-Raleigh Airport Authority. The circuit court of Saline County reversed the denial, and the appellant appealed to the appellate court. In a unanimous decision, the appellate court affirmed (163 Ill. App. 3d 253), holding that the property at issue was exempt from taxation. We granted the appellant's petition for leave to appeal (107 Ill. 2d R. 315(a)).

The property in question consists of 20 aircraft hangars which are available for rent to the public for storage of aircraft on a first come, first served basis. The airport averages a 75% occupancy rate, approaching full occupancy during the winter months. The hangars are rented on a monthly basis at the rate of $35 to $85 per month. Some tenants pay rent for a full year in advance, rather than on a monthly basis. The airport maintains the hangars and provides electricity.

This case turns on a question of statutory interpretation, arising under section 19.20 of the Revenue Act of 1939 (Ill. Rev. Stat. 1985, ch. 120, par. 500.20). Section 19.20 provides tax-exempt status for "[a]ll property of every kind belonging to any Airport Authority and used for Airport Authority purposes." The parties do not dispute that the appellee is an airport authority and that it owns the hangars. Thus, the critical question is whether the hangars are being used for "Airport Authority purposes."

The general principles governing our interpretation of the statute are clear. Where, as here, the facts are undisputed, a determination of whether property is exempt from taxation is a question of law. (*Weslin Properties, Inc. v. Department of Revenue* (1987), 157 Ill. App. 3d 580, 583.) While the Department's determination is entitled to some deference, courts of review are not bound to give the same measure of deference to an administrative agency's construction of a statute as is given to its findings of fact. (*Nestle Co. v. Johnson* (1979), 68 Ill. App. 3d 17, 20.) A decision based upon an erroneous, arbitrary, or unreasonable construction of a statute cannot be allowed to stand. (*Winnetkans Interested in Protecting the Environment v. Pollution Control Board* (1977), 55 Ill. App. 3d 475, 480.) On the other hand, statutes exempting property from taxation are to be strictly construed in favor of taxation (*Telco Leasing, Inc. v. Allphin* (1976), 63 Ill. 2d 305, 310; *Follett's Illinois Book & Supply Store, Inc. v. Isaacs* (1963), 27 Ill. 2d 600, 606), and the taxpayer seeking the protection of the exemption bears the burden of proving that he is entitled to it (*Thermos v. Department of Revenue* (1976), 37 Ill. App. 3d 410, 414).

The parties urge two differing interpretations of the phrase "Airport Authority purposes." The appellant relies principally on section 7 of "An Act in relation to

airport authorities" (Act) (Ill. Rev. Stat. 1985, ch. 15½, par. 68.1 *et seq.*), which states:

"The establishment and continued maintenance and operation of safe, adequate and necessary public airports and public airport facilities \*\*\* and the creation of airport authorities having powers necessary or desirable for the establishment and continued maintenance and operation of such airports and facilities are declared and determined to be in the public interest, and such powers and the corporate purposes and functions of such authorities, as herein stated, are declared to be public and governmental in nature and essential to the public interest." (Ill. Rev. Stat. 1985, ch. 15½, par. 68.7.)

The appellant argues that these phrases control the meaning of the term "Airport Authority purposes," and that such purposes are to be regarded as a "particular subset of those public and governmental purposes which generally qualify property so classified for an exemption from taxation." The appellant goes on to argue, citing such cases as *People ex rel. Lawless v. City of Quincy* (1946), 395 Ill. 190, and *Sanitary District v. Hanberg* (1907), 226 Ill. 480, that property leased or rented to private individuals is not being used for public purposes and is therefore not exempt from taxation. Both *City of Quincy* and *Hanberg* were decided prior to the enactment of section 19.20, at a time when the Revenue Act did not provide a specific airport-authority exemption, but only provided an exemption for " 'public grounds owned by a municipal corporation and used exclusively for public purposes.' " *City of Quincy*, 395 Ill. at 193, quoting Ill. Rev. Stat. 1945, ch. 120, par. 500.

Thus under the appellant's interpretation, only a "public use" of airport-authority property is use for an "Airport Authority purpose." The appellee urges a broader interpretation of the term "Airport Authority purpose." The appellee points out that section 7 of the

Act provides that public airport-authority "powers and the corporate purposes and functions *** as herein stated, are declared to be public and governmental in nature and essential to the public interest." (Ill. Rev. Stat. 1985, ch. 15½, par. 68.7.) The appellee argues that the purposes and functions of airport authorities implicitly include the rental of hangar facilities for the use of private aircraft. The Act defines an "Airport" as "any locality *** used or designed for the landing and taking off of aircraft, or for the location of *** hangars, buildings, structures, *** and other facilities." (Ill. Rev. Stat. 1985, ch. 15½, par. 68.1.) "Public Airport" means an airport owned by an airport authority "which is used or is intended for use by public, commercial and private aircraft and by persons owning, managing, operating or desiring to use, inspect or repair any such aircraft or to use any such airport for aeronautical purposes." (Ill. Rev. Stat. 1985, ch. 15½, par. 68.1.) The appellee constructs the following syllogism. Since: (1) "airports" include "hangars"; (2) "public airports" are airports which are intended for use by, among others, "private aircraft" and persons "desiring *** to use such airport for aeronautical purposes"; it follows that: (3) public airports are airports which include, among other things, hangars used to store private aircraft. Since the establishment and operation of a "public airport" is the cardinal purpose of an airport authority, it follows that the leasing of hangars to private parties for the storage of private aircraft is an "Airport Authority purpose."

This syllogism, while superficially plausible, is not perfect. While airports may certainly include hangars, and public airports may encompass hangars which can be used by private aircraft, it need not follow that these hangars can be rented to individual private aircraft owners for their exclusive use without infringing upon the "public" character of the airport. Be that as it may,

other considerations persuade us that such a use of the airport is a tax-exempt use for an "Airport Authority purpose" within the meaning of section 19.20 of the Revenue Act.

If it was true that airport-authority uses are synonymous with public uses in the strict sense, section 19.20 would be somewhat superfluous. Section 19.9 of the Revenue Act has long provided that "public grounds owned by a municipal corporation and used exclusively for public purposes" are exempt from taxation (Ill. Rev. Stat. 1985, ch. 120, par. 500.9), and this provision has previously been interpreted to include municipal airports (*People ex rel. Lawless v. City of Quincy* (1946), 395 Ill. 190, 193-94). There is a strong presumption against finding statutory language to be mere surplusage. (*People ex rel. Hartigan v. Illinois Commerce Comm'n* (1987), 117 Ill. 2d 120, 139; *Arnold v. Board of Trustees* (1981), 84 Ill. 2d 57.) Moreover, the lack of specific language in section 19.20 excluding from the exemption airport-authority property leased to private parties or used in part for private purposes militates against the appellant's position. A number of other statutory exemptions do, in fact, include such language. See, *e.g.*, Ill. Rev. Stat. 1985, ch. 120, par. 500.10 (all property "which may be used *exclusively* by societies for agricultural, horticultural, mechanical, or philosophical purposes, and *not for pecuniary profit*" (emphasis added)); Ill. Rev. Stat. 1985, ch. 120, par. 500.16 (parking areas "*not leased or used for profit,* when used as a part of a use for which an exemption if provided hereinbefore and owned by any school district, non-profit hospital or school, or religious or charitable institution which meets the qualifications for exemption" (emphasis added)).

The inclusion of a separate and broadly written exemption for airport-authority uses suggests that such uses, while they must be consistent with the mainte-

nance of a "public airport," need not be exclusively "public" in the sense that the appellant contends. The fact that these leases are short-term, in no case exceeding one year, and are available to all members of the flying public on a first come, first served basis strongly supports the conclusion that they serve a public airport's statutory function as a terminus for private, as well as public and commercial, aircraft. Without some provision for storage of private aircraft, private aircraft owners would be forced to construct their own storage facilities at a distance from the airport, or use public storage facilities which might not be available on short notice. The goal of assuring regular users of the airport that they will be able to store their craft in secure facilities bears a real and substantial relation to a public airport's function of serving as a terminus for private aircraft.

Cases from other jurisdictions holding hangars or other airport property leased to private individuals non-exempt are distinguishable. In all of these cases, the legislatures did not provide a separate exemption for airport-authority property, and the courts were faced only with the question of whether such property was "held for public use" or "used for public purposes." (See, *e.g.,* *Salina Airport Authority v. Board of Tax Appeals* (1988), 13 Kan. App. 2d 80, 761 P.2d 1261 (hangars leased to private corporations not "held for public use"); *City of Cleveland v. Perk* (1965), 2 Ohio St. 2d 173, 207 N.E.2d 556 (airport concessions leased under long-term agreements not "held for public use"); *Town of Harrison v. County of Westchester* (1963), 13 N.Y.2d 258, 196 N.E.2d 240, 246 N.Y.S.2d 593 (hangars leased to private corporations on 10- to 15-year leases not "held for public use"); *Chemung County v. Hartman* (1965), 24 A.D.2d 1063, 265 N.Y.S.2d 458 (month-to-month rentals of hangars not "held for public use"); but see *Hanover Township v. Town of Morristown* (1949), 4 N.J. Super.

22, 66 A.2d 187 (public airport "used for public purposes" notwithstanding lease of hangar space to private persons).) Where the legislatures of other States have provided exemptions for specified uses of public property, these exemptions have often been more broadly construed. (See *City of Newark v. Essex County Board of Taxation* (1969), 54 N.J. 171, 254 A.2d 513 (exemption for publicly owned "marine terminal facilities" includes facilities leased to private individuals).) The General Assembly's inclusion of a separate exemption for airport-authority uses suggests that this exemption is to be construed at least broadly enough to encompass private uses of airport-authority property which bear a real and substantial relation to the authority's statutory purpose of maintaining a public airport.

The case of *Marshall County Airport Board v. Department of Revenue* (1987), 163 Ill. App. 3d 874, is distinguishable, simply because it involves a municipally owned airport, rather than an airport authority. The farmland and tie-down areas in that case were therefore nonexempt under section 19.9 of the Revenue Act, and section 19.20 did not apply.

For these reasons, the judgment of the appellate court in No. 66381 is affirmed.

### FOX VALLEY AIRPORT AUTHORITY

In No. 66544, the appellee, the Fox Valley Airport Authority, sought an exemption for the 1984 tax year for eight parcels of real estate, six of the parcels having been assessed for improvements owned by the appellee and the other two parcels for the land. The Du Page County board of review recommended tax exemption for six of the eight parcels and no exemption for the two remaining parcels. The board also found that the leasehold interests in the six parcels held by private parties should be assessed. The Director of Revenue denied tax exemp-

tion for six of the parcels but allowed exemption for 26% of one parcel and one-third of a second parcel. On administrative review the circuit court reversed the Director's decision and ordered that exemptions be allowed for all eight parcels. On appeal by the Department, the appellate court affirmed the circuit court's decision as to the first six parcels but reversed as to the last two parcels, holding that 74% of the one and all of the other were subject to taxation. (164 Ill. App. 3d 415.) We granted the Department's petition for leave to appeal (107 Ill. 2d R. 315(a)).

The properties at issue in No. 66544 are identified by docket numbers. The first six parcels are described in the record as follows. Parcels 84—22—79 and 84—22—80 contain airport hangars which are rented to private parties on a monthly basis. Parcel 84—22—43 is a strip of land leased to private parties on a yearly basis for the outdoor storage of aircraft. Parcel 84—22—81 is under a long-term land lease under which the privately owned improvement is taxed to the lessee, who is restricted to using it for the indoor storage of aircraft, and the tax exemption sought is for the land only. Parcel 84—22—82 is a hangar leased to a private corporation for the storage, maintenance, and service of aircraft. Parcel 84—22—327 contains a three-bay hangar for which the Director allowed an exemption for one third of the land, as appellee used one of the bays to store its field-maintenance equipment; the remaining two bays were leased to a private corporation for private-aircraft-related uses for which exemption was denied.

The remaining two parcels are described in the record as follows. Parcel 84—22—138 is land improved by a residence which was leased to a private party during 1984. Parcel 84—22—139 is land improved with a farmhouse and three outbuildings: one outbuilding is vacant, the farmhouse is leased to an employee of the appellee

for "security purposes," and the appellee used the other two buildings for storage. Only the improvements were assessed for taxes, and because the appellee used certain buildings on parcel 84—22—139 for its airport purposes, the Director allowed an exemption for 26% of that property.

On administrative review, the circuit court reversed the Director's decision and ordered that exemptions be allowed for all eight parcels, finding that they were being used for airport-authority purposes. On appeal, the appellate court held that all of the parcels were exempt, except for the two numbered 84—22—138 and 84—22—139. The appellate court held that parcel 84—22—138, the property used as a residence, was nonexempt, and that parcel 84—22—139, the farmhouse property, was 26% exempt. The Department of Revenue has appealed that part of the appellate court decision which held the first six parcels exempt, and the appellee has cross-appealed from that part of the appellate court decision which held all of parcel 84—22—138 and part of parcel 84—22—139 nonexempt. The appellee has also cross-appealed on the ground that an untimely notice of appeal from the circuit court's order deprives the appellate court of jurisdiction.

The argument concerning the untimely notice of appeal is based upon the following facts. The final order of the circuit court in this case was entered on January 26, 1987. The Department mailed its notice of appeal from that order on February 23, 1987. The notice of appeal was received and file-stamped by the circuit clerk of Du Page County on February 26, 1987, 31 days from the date of the final judgment.

The appellee claims that this notice was untimely under Supreme Court Rule 303(a). Rule 303(a) provides, in pertinent part:

"[T]he notice of appeal must be filed with the clerk of the circuit court within 30 days after the entry of the final judgment appealed from." (107 Ill. 2d R. 303(a).)

The appellee maintains that a notice of appeal is not "filed with the clerk of the circuit court" until the clerk physically receives the document, as evidenced by the clerk's stamp. The Department, on the other hand, contends that a notice of appeal which is mailed within 30 days after the date of the final order appealed from should be considered timely even if it is not received and stamped until later. The rule itself provides no definition of the words "filed with the clerk of the circuit court," and the committee comments to the rule are also not helpful.

This issue has previously been the subject of controversy among different panels of the appellate court, and our court also has occasionally intervened in such cases by way of supervisory orders. In the case of *In re Estate of Eiberger* (1977), 49 Ill. App. 3d 1129, the appellate court dismissed an appeal where the appellant mistakenly sent the notice of appeal to the appellate court rather than the circuit court, and the notice was therefore not actually received by the circuit court clerk until after the 30-day period had expired. We granted leave to appeal and directed the appellate court in a supervisory order to reinstate the appellant's appeal. (*In re Estate of Eiberger* (January 26, 1978), No. 50090.) Following the decision in *Eiberger*, two other panels of the appellate court again dismissed appeals which had been mailed, but not received, within the 30-day period. (*Schneider v. Vine Street Clinic* (1979), 77 Ill. App. 3d 946; *Fairfax Family Fund, Inc. v. Couch* (1982), 103 Ill. App. 3d 492.) A third appellate panel disagreed, holding that mailing of the notice of appeal within 30 days from the entry of judgment will constitute filing of notice with the clerk of the circuit court. (*Holesinger v. Dubuque Feeder*

*Pig Co.* (1982), 104 Ill. App. 3d 39, 43; see also *Department of Conservation v. Baltimore & Ohio R.R. Co.* (1982), 103 Ill. App. 3d 417, 421 (date of mailing notice of appeal deemed date of filing in appeal to circuit court from order of Illinois Commerce Commission); *A.S. Shulman Electric Co. v. Village of Fox Lake* (1983), 115 Ill. App. 3d 746, 749 (deposit in mail of a post-trial motion, within 30 days of the entry of judgment, constitutes timely filing of the motion with the circuit court).) When still another appellate panel followed *Fairfax Family Fund* and *Schneider* rather than *Holesinger*, our court, citing *Holesinger*, granted a motion for a supervisory order and directed the appellate court to consider the issues raised in the notice of appeal. (*Reidel v. Reidel* (1984), 99 Ill. 2d 534.) While normally supervisory orders are not *stare decisis*, our citation of *Holesinger* has widely been taken to mean that we believe "the date of mailing a notice of appeal constitutes filing for purposes of Supreme Court Rule 303(a)." *In re Marriage of Morse* (1986), 143 Ill. App. 3d 849, 852.

We now confirm what our supervisory orders in *Eiberger* and *Reidel* foreshadowed: that notices of appeal mailed within the 30-day period and received thereafter are timely filed.

Our conclusion follows from a reading of the words "filed with the clerk of the circuit," considered in the light of modern policies and practices. The rule itself contains no definition of this phrase. And while older case law has held that papers are not filed until actually committed to the control and custody of the clerk (see, *e.g., People ex rel. Pignatelli v. Ward* (1949), 404 Ill. 240, 245) more recent authority suggests that this rule should be modified to take into account the widespread practice of filing documents by mail. Both our own Rule 11 (107 Ill. 2d R. 11) and section 1.25(1) of "An Act to revise the law in relation to the construction of the stat-

utes" (Ill. Rev. Stat. 1985, ch. 1, par. 1026(1)) specifically provide for timely service by mail, effective upon receipt by the post office or shortly thereafter. Although neither section 1.25(1) nor Rule 11 is directly applicable (the first because it applies only to papers filed with the State, and not the judiciary; the second because it applies only to service of papers upon parties), together they evince the modern policy of equating time of mailing with actual receipt.

More pertinently, our Rule 373 states:

> "Unless received after the due date, the time of filing records, briefs or other papers required to be filed within a specified time will be the date on which they are actually received by the clerk of the reviewing court. If received after the due date, the time of mailing shall be deemed the time of filing. Proof of mailing shall be made by filing with the clerk a certificate of the attorney, or affidavit of a person other than the attorney, who deposited the paper in the mail, stating the date and place of mailing and the fact that proper postage was prepaid, or a United States Postal Service certificate of mailing." 107 Ill. 2d R. 373.

Since a notice of appeal is filed with the circuit court rather than the "reviewing court," Rule 373 is not directly applicable. But it evinces a general policy of equating mailing and filing dates, particularly with respect to appellate practice. The reason for this is that Rule 373 "was designed to make it unnecessary for counsel to make sure that briefs and other papers mailed before the filing date actually reach the reviewing court within the time limit." (107 Ill. 2d R. 373, Committee Comments, at 476.) A notice of appeal, unlike many other papers filed in the circuit court, is closely related to the appellate process; when timely filed it divests the trial court of jurisdiction and confers jurisdiction upon the appellate court. (*Lombard v. Elmore* (1986), 112 Ill. 2d 467, 471-72.) It is therefore appropriate that the pro-

mailing policy of Rule 373 should be applied to the filing of a notice of appeal under Rule 303(a). Moreover, a liberal pro-mailing policy is more equitable, since it places smaller firms which may lack telefax machines and messenger services on an equal footing with their larger competitors. We express no opinion as to whether the same policy would apply to other papers filed in the circuit court, such as post-trial motions.

We therefore turn to the merits of No. 66544. What we have previously said as to No. 66381 disposes of the appellate court's holding with respect to the first six parcels: these parcels, although leased to private parties, are all being used in a manner which bears a real and substantial relationship to airport-authority purposes. The appellate court's holding that these properties are exempt is, therefore, affirmed.

As to the remaining two parcels, the appellee has cross-appealed, claiming that these also should be exempt. The appellee does not claim that the use of one property as a residence and the second as a farm constitutes use for airport-authority purposes. Instead, the appellee claims that both properties, while concededly devoted in part to private, non-airport-authority uses, are also being held for future expansion of the airport. Since an airport authority has the power to acquire property "used or useful for the *** *expansion* *** of any such public airport" (emphasis added) (Ill. Rev. Stat. 1985, ch. 15½, par. 68.8—02), the appellee argues that this "use" is exempt. And since section 19.20 of the Revenue Act does not condition exemption on the "exclusive" use of airport property for airport authority purposes, the appellee argues all of the property, notwithstanding its partial use for a non-airport-authority purpose, is exempt.

We assume for the sake of argument that vacant land, held only for expansion and not used for any private, non-airport-authority-related purpose would indeed

be exempt. But we are unable to agree with the appellant that property used *primarily* for a nonexempt purpose will be exempt if it is also used for an exempt purpose. If this was true, an airport authority could just as easily acquire apartment buildings or gold mines, and hold the land for future expansion while garnering the profits of its enterprises free of property tax. We agree with the airport authority that "all" of the property is being held for future expansion in the sense that all of the geographic area will one day contain airport facilities. But we cannot agree that the current, primary uses of these properties are airport related. In both cases the properties are currently being used for private purposes unrelated to airport expansion. Indeed, if they were not so used, the appellee would have no need to maintain the structures now on the land.

The appellee argues that the appellate court's reliance upon *City of Lawrenceville v. Maxwell* (1955), 6 Ill. 2d 42, was misplaced. In *City of Lawrenceville*, it was held that land owned by a municipal airport and devoted to farming, with the rents and income used to support the airport's activities, was not exempt because it was not "used exclusively or primarily for municipal or public purposes." (6 Ill. 2d at 50.) The appellee argues that *City of Lawrenceville* is distinguishable because *City of Lawrenceville* was decided under a statute which requires exclusive use for public purposes as a condition of exemption. The appellee's contention is correct, but beside the point. A literal interpretation of the word "exclusive" would deny exemption where any part of a property is not used for public purposes. Instead, the court in *City of Lawrenceville* held, as had been held previously, that it is "[t]he primary use to which property owned by a municipal corporation *** and not its secondary or incidental use" which is "controlling in determining whether it is used exclusively for 'municipal

purposes' so as to exempt it from taxation." (6 Ill. 2d at 48.) While section 19.20 of the Revenue Act does not contain the word "exclusive," we think it implicit in the phrase "and used for Airport Authority purposes" that the property's current, primary use be airport related. If this was not true, the phrase would have very little, if any, meaning.

What we have just said does not contradict our conclusion as to the properties in No. 66381 and the other properties in this case. The absence of the word "exclusive" in section 19.20 suggests only that the exempt purposes may have a stronger element of private benefit, so long as they are substantially related to the purpose of maintaining a public airport. It does not suggest that an airport authority can use its property for purposes unrelated to aviation without paying taxes.

For the foregoing reasons, the judgments of the appellate court in Nos. 66381 and 66544 are affirmed.

*Nos. 66381 & 66544 — Affirmed.*

JUSTICE CALVO took no part in the consideration or decision of this case.