CENTRAL STATES THRESHERMEN'S REUNION, INC., Plaintiff-Appellee, v. THE DEPARTMENT OF REVENUE *et al.*, Defendants-Appellants.

Fourth District   No. 4—91—0153

Opinion filed September 12, 1991.

Roland W. Burris, Attorney General, of Springfield (Rosalyn B. Kaplan, Solicitor General, and Robert G. Toews, Assistant Attorney General, of Chicago, of counsel), for appellants.

Strong, Blakeman & Schrock, Ltd., of Pontiac (Kenneth L. Strong, of counsel), for appellee.

PRESIDING JUSTICE LUND delivered the opinion of the court:

Defendants Roger D. Sweet and the Illinois Department of Revenue (Department) appeal from the order of the circuit court of Livingston County granting plaintiff Central States Threshermen's Reunion, Inc., a property-tax exemption. We reverse.

On June 18, 1986, plaintiff filed an application requesting a property-tax exemption for its 40 acres of property in Livingston County. Plaintiff's application described the activities which take place on its property as follows: "[Plaintiff] holds a five day reunion each year over Labor Day weekend[,] showing old time threshing methods, [m]achines and antique tractors and engines. We have a daily parade on the grounds and demonstrations at Saw Mill, Shingle Mill, Grist Mill, [e]tc." Plaintiff's purpose for being, as stated in its bylaws, is "to preserve and exhibit, for educational and historical purposes, old style power and steam machinery, automobiles and hobby engines."

Specific events and exhibits held at the annual reunion were described in an attachment to the application. The events included a display of antique cars and a parade through town, a "Thresher's Olympics," with engineers and their machines competing against each other; contests including bundle pitching, shocking oats, and horseshoe pitching; an antique tractor pull; a horse show; a daily parade of antique threshing machines and tractors; and a daily flea market. The exhibits include a vintage sawmill operation; a wood-shingle mill; a gristmill grinding wheat for flour; a cider press; a blacksmith shop; an oat-threshing operation using antique equipment; displays of threshing machines, small model engines, stationary engines and pumps; and a women's hobby and craft show.

Plaintiff derives income from the property from "admission charged [to the] public, Flea Market fees, Concessions, camping, and other activities during the Reunion." Attached to the application was a letter from Carl Ogle, plaintiff's president, which explained that the last cash crop grown on the property was wheat which was harvested in the summer of 1985. Since that time, all efforts on the entire 40 acres have been devoted to developing the property for the annual show. Ogle further stated that oats were then growing on the property, which would be used for a threshing

demonstration during the show. Plaintiff's application also contained proof of its status as a tax-exempt organization under section 501(c)(3) of the Internal Revenue Code of 1939 (Code) (26 U.S.C. §501(c)(3) (1988)).

The Livingston County Board of Review recommended that the exemption be granted pursuant to section 19.10 of the Revenue Act of 1939 (Revenue Act) (see Ill. Rev. Stat. 1989, ch. 120, par. 500.10). The application was then submitted to the Department. On October 28, 1987, defendant Roger Sweet, who was then Director of the Department, sent a letter to the plaintiff denying its request for an exemption.

The cause proceeded to an administrative hearing, where plaintiff's president and treasurer testified. Victor Opperman, plaintiff's treasurer, testified that he has been associated with the plaintiff for approximately 30 years. He stated that the organization originated in 1949 as a reunion of old-time threshermen who displayed and demonstrated their steam-operated machinery. As time went on, the organization's purpose broadened to include the goal of educating people about the methods and machinery used in threshing. Opperman stated that steam-powered threshing machines faded from use between 1910 and 1920, and newer generations were generally uneducated in the ways of the threshermen. The organization was incorporated in 1950 as a not-for-profit organization. The reunion has always had a flea market, at least for the sale of parts and tools related to the equipment, and a horse show has been part of the reunion for many years. However, Opperman testified that plaintiff was, in fact, a society for agricultural purposes and that the activities of the organization were always, for the most part, agriculturally oriented.

Opperman explained that plaintiff has had surplus funds from its reunion every year since 1980. These funds were obtained from membership fees, admission fees, the sale of certain goods, and from fees charged to campers, concessionaires, and flea-market vendors. The surplus funds were used to purchase the property for which the exemption was requested and to fund $86,000 in improvements made to the property. An additional $25,000, which was donated by a local trust, has also been used to finance improvements. Opperman stated that the property has been developed for the exclusive use of the plaintiff and its annual reunion and could no longer be used for agriculture or any other commercial purpose. The plaintiff has plans to improve the land further and may eventually add a museum to the site.

Carl Ogle, plaintiff's president, described the buildings that were currently on the property. The site contains a 98-foot by 60-foot storage building, a toilet and shower facility, a 20,000-gallon water tank, a shed for the sawmill, a portable ticket gate at the front entrance, and a number of fire hydrants and light poles. Ogle also expressed plaintiff's plans for further improving the property. Plaintiff does not charge admission for organized groups of senior citizens or field trips of school children who come to visit the reunion.

The administrative law judge (ALJ) found that plaintiff was neither a charitable organization nor a society organized for agricultural purposes. He further concluded that the parcel in question was not currently being used for agricultural or charitable purposes. The Department accepted the ALJ's recommendation and denied plaintiff's application for an exemption.

Plaintiff filed a complaint for administrative review. Following a hearing, the circuit court issued an order reversing the decision of the Department. The court found that plaintiff's activities "from its inception until the present were agriculturally oriented." Although the court recognized that plaintiff's activities were focused on the historical and educational perspective of Illinois agriculture, it concluded plaintiff qualified for the exemption because the Illinois Constitution, statutes, and case law do not exclude historical enterprises. Defendants now appeal, contending the circuit court improperly reversed the Department's decision.

■ When, as in this case, the facts upon which a decision of tax-exempt status rests are undisputed, whether property is exempt is a question of law. (*Cook County Masonic Temple Association v. Department of Revenue* (1982), 104 Ill. App. 3d 658, 660, 432 N.E.2d 1240, 1242.) While the Department's determination is entitled to some deference, courts of review are not bound to give the same measure of deference to an administrative agency's construction of a statute as is given to its findings of fact. (*Nestle Co. v. Johnson* (1979), 68 Ill. App. 3d 17, 20, 385 N.E.2d 793, 795.) A decision based upon an erroneous, arbitrary, or unreasonable construction of a statute cannot be allowed to stand. *Harrisburg-Raleigh Airport Authority v. Department of Revenue* (1989), 126 Ill. 2d 326, 331, 533 N.E.2d 1072, 1074.

■ Article IX, section 6, of the Illinois Constitution of 1970 provides:

"The General Assembly by law may exempt from taxation only the property of the State, units of local government and

school districts and property used exclusively for agricultural and horticultural societies, and for school, religious, cemetery and charitable purposes. The General Assembly by law may grant homestead exemptions or rent credits." (Ill. Const. 1970, art. IX, §6.)

To implement the above provision, the legislature has enacted section 19.10 of the Revenue Act, which provides tax-exempt status for "[a]ll property which may be used exclusively by societies for agricultural, horticultural, mechanical or philosophical purposes, and not for pecuniary profit." (Ill. Rev. Stat. 1989, ch. 120, par. 500.10.) As applied to the instant case, section 19.10 sets forth three requirements for exemption: (1) the property in question must be owned by an agricultural society; (2) the property must be used exclusively for agricultural purposes; and (3) the property must not be used for pecuniary profit. We need only address the first two requirements of section 19.10.

■ Provisions granting tax exemptions are to be strictly construed in favor of taxation (see *Harrisburg-Raleigh*, 126 Ill. 2d at 331, 533 N.E.2d at 1074), and must come not only within the terms of the statute but also the authority given by the constitution. The burden of proving and establishing a right to exemption is upon the party seeking the exemption. (*Harrisburg-Raleigh*, 126 Ill. 2d at 331, 533 N.E.2d at 1074.) All facts are to be construed and all debatable questions resolved in favor of taxation. Every presumption is against the intention of the State to exempt property from taxation. It is therefore incumbent upon the plaintiff to show clearly that the organization and the use of its property come within the provisions of the statute and the constitution. *Rogers Park Post No. 108 v. Brenza* (1956), 8 Ill. 2d 286, 290-91, 134 N.E.2d 292, 295.

Plaintiff has cited no authority which suggests that an organization devoted exclusively to staging an historical display of farming equipment and methods qualifies as an "agricultural society." Further, the few cases which have addressed the rationale for such an exemption indicate that the purposes of the constitution and statute would not be served by granting the plaintiff an exemption. In *In re Application of County Treasurer* (1977), 52 Ill. App. 3d 718, 720-21, 367 N.E.2d 1021, 1023, the Second District Appellate Court explained that the statutory exemption for agricultural societies was designed to promote the agricultural industry and thus aid the economic development of the State:

"Furthermore, the categories contained in article IX, section 6 of the Illinois Constitution of 1970 are all categories

that the State has a legitimate interest in protecting and promoting through the granting of tax-exempt status. This is particularly true in the case of agriculture, which has played a preeminent role in the development of this State and which continues to play a vital role in the economic well-being of the State of Illinois. In this light, it is quite understandable why the people of the State of Illinois would empower their State legislature through the State constitution to grant tax-exempt status to societies that promote and perpetuate this vital Illinois industry. Section 19.10 of the Revenue Act of 1939 is consistent with the goal of promoting and perpetuating Illinois agriculture by granting tax-exempt status to the properties of agricultural societies so long as the property is not used for pecuniary profit."

Similarly, in *Assessors of West Springfield v. Eastern States Exposition* (1950), 326 Mass. 167, 170, 93 N.E.2d 462, 464, the Massachusetts Supreme Court addressed the legislative purpose underlying the Massachusetts exemption for property held by agricultural societies, and stated, "Whatever aids agriculture helps to advance the health and prosperity of the Commonwealth. The Legislature for a century has held steadfast to the view that one important means of assistance is the exemption of all property of incorporated agricultural societies."

Finally, under section 501(c)(5) of the Code (26 U.S.C. §501(c)(5) (1988)) and the applicable Treasury regulation, in order for the taxpayer to qualify for exemption as an agricultural organization, it must have as its purpose the betterment of agricultural working conditions, the improvement of the grade of agricultural products, or the development of a higher degree of efficiency in the occupation of farming or ranching. (*Campbell v. Big Spring Cowboy Reunion* (5th Cir. 1954), 210 F.2d 143, 145.) We note that plaintiff was granted a tax exemption by the Internal Revenue Service, but not as an agricultural organization. Plaintiff enjoys tax-exempt status under section 501(c)(3) of the Code, which exempts entities organized and operated exclusively for religious, charitable, scientific, testing for public safety, literary, or educational purposes, as well as entities organized to foster national or international sports competition or to prevent cruelty to children or animals. 26 U.S.C. §501(c)(3) (1988).

■ The foregoing authorities suggest that an agricultural society entitled to tax-exempt status is an organization which promotes the development and improvement of agriculture. The Department

correctly concluded that an organization created for the sole purpose of displaying and demonstrating farming equipment from a bygone era does not qualify as an agricultural society under section 19.10. While the annual threshermen's reunion is certainly of great historical and educational value, it does no more to promote Illinois agriculture than an antique automobile show would to promote the modern car industry. The Department also properly found that plaintiff's land is used for an historical exhibition rather than an agricultural purpose and thus does not satisfy the second requirement of section 19.10. For these reasons, we reverse the order of the circuit court.

Reversed.

STEIGMANN and KNECHT, JJ., concur.