AMERICAN STORES COMPANY, and its Subsidiaries, Plaintiff-Appellee, v. THE DEPARTMENT OF REVENUE *et al.*, Defendants-Appellants.

First District (5th Division)   No. 1—96—4444

Opinion filed May 1, 1998.

James E. Ryan, Attorney General, of Chicago (Barbara A. Preiner, Solicitor General, and Erik G. Light, Assistant Attorney General, of counsel), for appellants.

Sidley & Austin, of Chicago (Constantine L. Trela, Jr., and Scott J. Heyman, of counsel), for appellee.

JUSTICE HARTMAN delivered the opinion of the court:

Plaintiff, American Stores Company and its subsidiaries (American), sought circuit court administrative review of the decision of the Department of Revenue (Department) disallowing an investment tax credit (ITC) for property American utilized during the 1984-87 taxable years. The court reversed the Department's decision, finding that the property qualified as property used in retailing pursuant to section 2—201(g) of the Income Tax Act (Ill. Rev. Stat. 1985, ch. 120, par. 2—201(g)) (section 2—201(g)). The Department appeals.

In November 1984, American acquired Jewel Companies, Inc. (Jewel), which is primarily engaged in the retail sale of food, drugs, and general merchandise for personal and household use. Jewel conducts its domestic operations through its divisions, which include Jewel Food Stores, and its wholly owned subsidiary corporations, including Osco Drug, Inc. (Osco). Jewel Food Stores operated ap-

proximately 190 supermarkets and, in conjunction with Osco, combination supermarket and retail drug stores in Illinois and other Midwestern states. Jewel Food Stores also owned and operated a warehouse, a truck maintenance facility, and several food manufacturing operations, as well as a fleet of trucks used to deliver inventory to its stores. The warehouse was used to supply merchandise to Illinois stores, and the maintenance facility serviced trucks and trailers used to deliver the merchandise to stores and food manufacturing plants. Osco operated approximately 300 retail drug stores in Illinois.

American timely filed income tax returns for the taxable years ending on January 31, 1983, January 28, 1984, November 16, 1984, February 2, 1985, February 1, 1986, and January 31, 1987. The Department conducted an audit of those returns and issued notices of deficiencies to American on June 13, 1989, August 10, 1989, and January 25, 1990. American timely filed protests against all these notices and filed claims for a refund.

One of the disputes between American and the Department involved ITCs claimed by Jewel and Osco against their personal property tax replacement income tax liability, imposed by section 2—201(c) of the Income Tax Act (Ill. Rev. Stat. 1985, ch. 120, par. 2—201(c)) (section 2—201(c)). Jewel and Osco claimed the ITCs for buildings, machinery, and equipment acquired and placed in service in its Illinois retail business. The items claimed amenable to ITC treatment included semi-trailers used to haul inventory between suppliers, stores, and the Jewel warehouse, and to haul recyclable material for recycling; warehouse equipment such as forklift trucks, warehouse racks, shelving used to store products, and office furniture and equipment; building costs for remodeling the warehouse, administrative offices, and storage garage; a mainframe computer used for administration and distribution of inventory; a pressure washer for cleaning truck parts; and a time management system used to keep track of the work hours of Jewel's truck drivers.

After auditing American, the Department allowed it to claim ITC credit for items used on retail floor areas of the stores, but disallowed all other items claimed as an ITC. The Department categorized the disallowed property as (1) store equipment not located on retail floor areas; (2) warehouse and related equipment; (3) transportation facilities and related equipment; and (4) office equipment. The Department asserted that this property did not qualify for ITC because it was not used "in retailing" as required by section 2—201(g).

American requested an administrative hearing to review the Department's decision, where it introduced the testimony of Hugh Muncy, a former president of the Illinois Retail Merchants Associa-

298

tion, David Vite, the Association's current president, and the former senior vice president of Jewel, Gene B. Kilham. Each witness defined "property used in retailing" to include the machinery, equipment, and offices used to carry out functions such as accounting, purchasing, risk management, marketing strategies, personnel functions, and legal matters, which they said were essential parts of the retailing business. Nevertheless, the administrative law judge (ALJ) ruled in favor of the Department on the ITC and other issues. The Director of the Department accepted the ALJ's recommendations and adopted its decision.

American filed a complaint in the circuit court, seeking administrative review of the Director's ruling pursuant to the Administrative Review Law (735 ILCS 5/3—101 *et seq.* (West 1992)). While the case was pending, the parties settled all tax issues with the exception of the ITC question and the Department's assessment of penalties against American. In a written decision, the circuit court reversed the administrative ruling, holding that American was entitled to claim ITCs for the disputed property. The court also reversed a portion of the Department's decision assessing penalties against American.

On appeal, the Department argues that the circuit court's interpretation of section 2—201(g) unduly expanded the term "retailing" to include all property used in support of retailing, an interpretation the Department contends is supported by neither the plain language nor the legislative history of section 2—201(g).

■ Section 2—201 imposes a personal property tax replacement income tax on every corporation, partnership, and trust that earns or receives income in this state. Section 2—201(g) allows for an investment tax credit against this tax "for investment in qualified property." "Qualified property" is defined as:

"property which:

\* \* \*

is used in Illinois by the taxpayer in manufacturing operations or in mining coal or fluorite, or *in retailing*." (Emphasis added.) Ill. Rev. Stat. 1985, ch. 120, par. 2—201(g)(2)(d).

The term "retailing" includes:

"the sale of tangible personal property or services rendered in conjunction with the sale of tangible consumer goods or commodities." Ill. Rev. Stat. 1985, ch. 120, par. 2—201(g)(3).

■ In construing the scope of section 2—201(g), and determining whether the disputed property is subject to the ITC, this court's primary purpose must be to ascertain and give effect to the true intent and meaning of the legislature. *People v. Frieberg*, 147 Ill. 2d 326,

345, 589 N.E.2d 508 (1992); *Powers v. Retirement Board of the Policemen's Annuity & Benefit Fund*, 249 Ill. App. 3d 280, 281, 618 N.E.2d 957 (1993). The statutory language is the best indication of the drafters' intent (*People ex rel. Village of McCook v. Indiana Harbor Belt R.R. Co.*, 256 Ill. App. 3d 27, 29, 628 N.E.2d 297 (1994); *Powers*, 249 Ill. App. 3d at 281) and should be given its plain or ordinary and popularly understood meaning. *Collins v. Board of Trustees of the Firemen's Annuity & Benefit Fund*, 155 Ill. 2d 103, 111, 610 N.E.2d 1250 (1993). In determining legislative intent, courts may look at the reason and necessity for the law, the evils sought to be remedied, and the purpose to be achieved. *Frieberg*, 147 Ill. 2d at 345. The legislative history or background of a statute also may be instructive. *In re B.C.*, 176 Ill. 2d 536, 543, 680 N.E.2d 1355 (1997); *Van's Material Co. v. Department of Revenue*, 131 Ill. 2d 196, 202, 545 N.E.2d 695 (1989) (*Van's Material*). Where the language of a statute is clear and unambiguous, it will be given effect without resort to other aids for construction. *B.C.*, 176 Ill. 2d at 542; *Powers*, 249 Ill. App. 3d at 281. Taxing statutes must be construed strictly, and in cases of doubt will be construed most strongly against the government and in favor of the taxpayer. *Van's Material*, 131 Ill. 2d at 202.

■ The Department has provided varying interpretations of the term "in retailing." Its regulation defines "retailing" as

> "the sale of tangible personal property. It is not required that such tangible personal property be finished consumer goods, or that the property be sold to its ultimate consumer. For example, sales of tangible personal property for resale are included in the definition of retailing." 86 Ill. Adm. Code § 100.2900(c)(9) (1986).

At the administrative hearing, the Department argued that qualified property must be associated with a specific retail sale, such as property used in retail floor areas. In the circuit court, however, the Department adopted a more expansive view, conceding that all property located at the site of a retail store qualified as property used "in retailing," but continuing to insist that the remaining three categories of property—warehouse equipment, transportation facilities and related equipment, and office equipment—did not qualify for ITC treatment.

■ Under the Administrative Review Law (735 ILCS 5/3—101 (West 1994)), judicial review extends to all questions of law and fact presented by the record before the court. *Abrahamson v. Illinois Department of Professional Regulation*, 153 Ill. 2d 76, 88, 606 N.E.2d 1111 (1992). An agency's interpretation of a statute it is charged with administering, where based on agency expertise, is entitled to some

deference. An erroneous construction of a statute, however, is not binding on the court (*Boaden v. Department of Law Enforcement*, 171 Ill. 2d 230, 239, 664 N.E.2d 61 (1996)), and a decision based upon an erroneous, arbitrary, or unreasonable construction cannot be allowed to stand. *Harrisburg-Raleigh Airport Authority v. Department of Revenue*, 126 Ill. 2d 326, 331, 533 N.E.2d 1072 (1989). Moreover, administrative rules interpreting a statute may neither limit nor extend the scope of that statute. *Van's Material*, 131 Ill. 2d at 203.

■ In the present case, neither the plain language of section 2—201(g) nor its legislative history supports the Department's distinction between property located at the site of the retail store and property located at a retailer's warehouse, administrative offices, or transportation facilities. Section 2—201(g) provides that qualified property must be used "in retailing." Under section 2—201(g)(3), retailing specifically encompasses "services rendered in conjunction with the sale" of tangible personal property. Ill. Rev. Stat. 1985, ch. 120, par. 2—201 (g)(3). Therefore, property used for the purpose of obtaining the sale of tangible goods qualifies for the tax credit.

Section 2—201(g) contains no limiting language requiring that qualified property be located at the retail store. As noted above, the General Assembly provided a more expansive definition of "retailing" than suggested by the Department, allowing retailers to claim an ITC not only for property used in "the sale of tangible property," but also property used to perform "services rendered in conjunction with the sale of tangible consumer goods or commodities." Ill. Rev. Stat. 1985, ch. 120, par. 2—201(g). This language includes property located at the retail store site or off-site, and demonstrates the legislature's intention that qualified property used "in retailing" includes any property used by a retailer to obtain and complete a retail sale, or to perform services in conjunction with the completion of such a sale.

The Department claims the legislative history of section 2—201(g) demonstrates that the General Assembly did not intend to create an expansive definition of property used "in retailing." During legislative debates over the personal property tax replacement income tax, several legislators expressed concern that allowing taxpayers to claim ITCs would reduce substantially the amount of revenue received from that tax. 82d Ill. Gen. Assem., Senate Proceedings, May 18, 1981, at 14, 16, 17. The State Senate subsequently voted to reduce the rate of ITCs that a taxpayer could claim, from 1% of the basis of qualified property to .5%. 82d Ill. Gen. Assem., Senate Proceedings, May 18, 1981, at 18. These debates do not establish legislative intent to limit the scope of property that would qualify for use in retailing. In addressing revenue concerns, legislators instead chose to decrease

the monetary amount of ITCs, rather than restrict the type or location of property that qualified for ITCs.

The Department's argument for such a limitation is further undermined by its position with regard to wholesale sellers who, by their nature, do not sell goods from a retail store. The Department acknowledges that the ITC applies to qualified property used by wholesalers, but contends that "sales at a wholesaler's place of business would be considered sales at a 'retail' site." This interpretation of the term "retailing" would result in an inconsistent application of section 2—201(g), in that property located at a wholesaler's "place of business" could qualify for an ITC, whereas identical property used by a retailer for analogous purposes, but not located at the retail store, would not so qualify. Further, property used at the site of a Jewel or Osco store would qualify for an ITC although the same property, used for the same purposes but located at the warehouse, administrative offices, or transportation facilities, would not qualify for an ITC. The Department offers no evidence, either from the language of section 2—201(g) or its legislative history, that the General Assembly intended such a dichotomy in dealing with wholesalers and retailers, or in the treatment of property located at or away from a retail store.

Moreover, such a restriction would punish unfairly larger retailers who, unlike small retailers, do not store all their personal property at the retail store site, and who require the use of warehouses and transportation facilities to conduct retail business. Undisputed evidence presented at the administrative hearing established that Jewel and Osco could not conduct their retailing business if they did not purchase trucks to transport the goods to the retail stores, or provide adequate storage for the goods at a warehouse until they could be transported to the various stores by the trucks.

The Department criticizes the circuit court's interpretation of and reliance on the supreme court's decision in *Van's Material*, which the Department claims is distinguishable from the present case. The court in *Van's Material* was faced with the issue of whether the purchase of two ready-mix concrete trucks qualified for a manufacturing exemption. The Department, relying on its own regulations, argued for a narrow interpretation of the term "manufacturing process," which the *Van's Material* court rejected, finding that such an interpretation was not "inherently clear" from the statutory language, and concluding that the Department's regulations were "unduly restrictive." *Van's Material*, 131 Ill. 2d at 205-06, 209. After construing the remaining portions of the statute providing for the exemption, the court concluded that the exemption applied to the purchase of the trucks. 131 Ill. 2d at 216-17.

In the present case, it does not "follow naturally" from the language of section 2—201(g), as the Department urges, that the General Assembly intended to limit property used in retailing to property located at the site of the retail store. Furthermore, the Department's narrow interpretation of section 2—201(g), and its regulations further limiting the scope of that provision, are unduly restrictive in light of the clear language allowing ITCs for all property used in "the sale of tangible personal property or services rendered in conjunction with the sale of tangible consumer goods or commodities."

The *Van's Material* court concluded that the manufacturing exemption applied to ready-mix concrete trucks because "[t]he entire vehicle is essential to the process" of preparing concrete. *Van's Material*, 131 Ill. 2d at 217. This conclusion reflected the statutory requirement that the property be used "primarily" in the manufacturing process. Employing a similar analysis, the circuit court in the present case found that the property at issue had the "predominant purpose" of furthering American's ability to sell its products at retail, and "were at the very core" of its retail business. In contrast to the manufacturing exemption at issue in *Van's Material*, section 2—201(g) does not require that the property be used "primarily" for retailing, or that the "predominant purpose" of the property's use be for retailing. The statute simply requires that the property be used in the sale of tangible personal property, or in services rendered in conjunction with such a sale.

In this case, undisputed evidence presented at the administrative hearing established not only that the property at issue was used in retailing, but also that the property was essential to the retailer's retail operations, without which the retailer could not conduct sales of goods. The Department erred in disallowing ITCs for property located at the warehouse, transportation facilities, and administrative offices.

In its notice of appeal, the Department requested review of the circuit court's reversal of the imposition of penalties against American. The Department waived that issue by failing to raise it in its brief. 134 Ill. 2d R. 341(e)(7).

For the foregoing reasons, the circuit court's order reversing the Department's decision is affirmed.

Affirmed.

HOFFMAN, P.J., and HOURIHANE, J., concur.