# ILLINOIS OFFICIAL REPORTS

## Supreme Court

---

### *Gruszeczka v. Illinois Workers' Compensation Comm'n*, 2013 IL 114212

---

| | |
|---|---|
| Caption in Supreme Court: | MARK GRUSZECZKA, Appellant, v. THE ILLINOIS WORKERS' COMPENSATION COMMISSION (Alliance Contractors, Appellee). |
| Docket No. | 114212 |
| Filed | August 1, 2013 |
| Held<br>(*Note: This syllabus constitutes no part of the opinion of the court but has been prepared by the Reporter of Decisions for the convenience of the reader.*) | Where a workers' compensation claimant's request for circuit court review of an Industrial Commission decision was mailed within the 20 days called for by statute, but was not received by the clerk of circuit court until the twenty-fourth day, the statute's ambiguity was resolved by applying the "mailbox" rule to hold that the filing was timely and that subject matter jurisdiction in the circuit court was not lacking; if this construction is not what the legislature intended, it needs to clearly so set forth. |
| Decision Under Review | Appeal from the Appellate Court for the Second District; heard in that court on appeal from the Circuit Court of McHenry County, the Hon. Thomas Meyer, Judge, presiding. |
| Judgment | Reversed and remanded. |

Counsel on
Appeal

Jane M. Ryan and Thomas M. Strow, of the Law Offices of Peter F. Ferracuti, P.C., of Ottawa, for appellant.

Daniel R. Egan, of Rusin, Maciorowski & Friedman, Ltd., of Chicago, for appellee Alliance Contractors.

Justices

JUSTICE THOMAS delivered the judgment of the court, with opinion.
Chief Justice Kilbride and Justices Garman, Karmeier, and Theis concurred in the judgment and opinion.
Justice Freeman dissented, with opinion, joined by Justice Burke.

**OPINION**

¶ 1     Claimant, Mark Gruszeczka, sought benefits under the Workers' Compensation Act for accidental injuries allegedly arising out of and in the course of his employment. After a hearing, an arbitrator denied the claim. The Illinois Workers' Compensation Commission (Commission) upheld the arbitrator's decision, and the circuit court of McHenry County confirmed the Commission's decision. On appeal, a divided panel of the appellate court vacated the judgment of the circuit court as having been entered without subject matter jurisdiction, and dismissed Gruszeczka's appeal. 2012 IL App (2d) 101049WC. We allowed Gruszeczka's petition for leave to appeal (Ill. S. Ct. R. 315 (eff. Feb. 26, 2010)), and now reverse the judgment of the appellate court.

¶ 2                                    BACKGROUND

¶ 3     Gruszeczka filed an application for adjustment of claim alleging accidental injuries sustained on July 21, 2004, while he was working for defendant Alliance Contractors (Alliance). In March 2008 an arbitrator for the Commission found that Gruszeczka did not sustain accidental injuries arising out of and in the course of his employment with Alliance. The arbitrator also found that, "[e]ven assuming an accident did in fact occur," Gruszeczka failed to prove by a preponderance of the evidence that his condition of ill-being was causally related to that accident. On April 15, 2009, the Commission affirmed and adopted the arbitrator's decision denying benefits. Gruszeczka's attorney received a copy of the Commission's decision on April 20, 2009.

¶ 4     Gruszeczka sought judicial review of the Commission's decision in the circuit court of De Kalb County, where the alleged accident occurred. Pursuant to section 19(f)(1) of the Workers' Compensation Act (Act) (820 ILCS 305/19(f)(1) (West 2008)), Gruszeczka submitted to the clerk of the circuit court (1) a request for the issuance of summons, and (2) his attorney's affidavit of payment of the probable cost of the record. The clerk's office file-

stamped these documents on May 14, 2009, which was 24 days after Gruszeczka's attorney received the Commission's decision.

¶ 5 Alliance filed a motion to dismiss, arguing the circuit court lacked jurisdiction to entertain Gruszeczka's action for judicial review because it was filed more than 20 days after Gruszeczka's attorney received the Commission's decision. Alliance argued, in addition, that venue was improper in the circuit court of De Kalb County because Alliance, a party defendant, was located in McHenry County. In his response, Gruszeczka argued that he fulfilled the jurisdictional requirements for filing an action for judicial review by mailing all of the necessary documents to the clerk of the circuit court within 20 days of his attorney's receipt of the Commission's decision. Attached to Gruszeczka's response were affidavits of his attorney and of Coreen Berg, a clerk in the attorney's office. In her affidavit, Berg stated that on May 4, 2009, she mailed the following to the clerk of the circuit court: Gruszeczka's request for the issuance of summons, summons to defendants, a certificate of mailing, the attorney's affidavit of payment of the probable cost of the record, and checks for the filing fee and for the certified mailing of the summons. As to the issue of venue, Gruszeczka argued venue was appropriate in De Kalb County because he was injured while working in Sycamore, which is in De Kalb County.

¶ 6 The circuit court of De Kalb County denied Alliance's motion to dismiss Gruszeczka's action for want of jurisdiction, but granted the motion to transfer venue to the circuit court of McHenry County. After the matter was transferred to McHenry County, Alliance filed a motion to reconsider the denial of its motion to dismiss for lack of jurisdiction. The circuit court denied the motion to reconsider. On the merits of Gruszeczka's action for judicial review, the circuit court of McHenry County confirmed the Commission's decision denying Gruszeczka benefits under the Act.

¶ 7 A divided appellate court held that Gruszeczka failed to commence his action for judicial review within the 20-day period mandated in section 19(f)(1) of the Act. 2012 IL App (2d) 101049WC. The appellate court majority acknowledged that a party is entitled to rely on the mailbox rule when he seeks review of an arbitrator's decision before the Commission (*Norris v. Industrial Comm'n*, 313 Ill. App. 3d 993 (2000)), and when he seeks review of the circuit court's decision in the appellate court (*Harrisburg-Raleigh Airport Authority v. Department of Revenue*, 126 Ill. 2d 326 (1989)), but held that he may *not* do so at the middle stage of review when he seeks review of the Commission's decision in the circuit court. The majority stated that it "decline[d] to follow *Norris*," and that *Harrisburg-Raleigh Airport Authority* was distinguishable because in that case this court was interpreting one of its rules and exercising its rulemaking authority. 2012 IL App (2d) 101049WC, ¶¶ 11, 12. The majority held that a court could *not* interpret a statute as providing for a mailbox rule and said that it was aware of no authority that would allow it to do so. *Id.* ¶ 12. Instead, the majority found guidance in cases that declined to apply the mailbox rule to the filing of a civil complaint (*Kelly v. Mazzie*, 207 Ill. App. 3d 251 (1990)), and a section 2-1401 petition (*Wilkins v. Dellenback*, 149 Ill. App. 3d 549 (1986)). The majority noted that section 19(f)(1) requires that a proceeding for judicial review be "commenced" within 20 days of the receipt of the decision, and held that the same rule that applies to the commencement of civil complaints and section 2-1401 proceedings should also apply here. 2012 IL App (2d) 101049WC, ¶ 13.

The majority cited Webster's for the proposition that "commence" means "to begin or to start," and stated that it was "at a loss to understand how one can begin or start any action in the circuit court before the necessary documentation is presented to the clerk of the court." *Id.* ¶ 15. The appellate court vacated the judgment of the circuit court as having been entered without subject matter jurisdiction and dismissed Gruszeczka's appeal.

¶ 8   Justices Stewart and Holdridge dissented. The dissent noted that the mailbox rule has already been held to apply to the other two steps in the workers' compensation appeal process, and argued that it is illogical to apply a different rule at the middle stage. *Id.* ¶ 20 (Stewart, J., dissenting, joined by Holdridge, J.). The dissent argued that *Kelly* and *Wilkins* were distinguishable because they involved original actions in the circuit court. Moreover, the dissent pointed out that *Kelly* and *Wilkins* specifically distinguished cases adopting the mailbox rule for the very reason that those cases involved jurisdictional steps in the appeal process rather than the filing of original actions. *Id.* ¶ 24.

¶ 9                                             ANALYSIS

¶ 10   Gruszeczka argues that the circuit court acquired subject matter jurisdiction when Berg mailed all of the necessary documents to the clerk of the circuit court of De Kalb County on May 4, 2009, which was within 20 days of the receipt of the Commission's decision. Gruszeczka argues that the mailbox rule should apply when a party seeks judicial review of a Commission decision under section 19(f)(1). Under the mailbox rule, Gruszeczka asserts, the time of the mailing of the necessary documents to the clerk of the circuit court is the time of filing for jurisdictional purposes. See Black's Law Dictionary 964 (7th ed. 1999) (defining "mailbox rule" as "[t]he principle that when a pleading or other document is filed or served by mail, filing or service is deemed to have occurred on the date of mailing").

¶ 11   Alliance responds that there is nothing in section 19(f) of the Act "which allows for the initiation of the Circuit Court [review] process by mail." Alliance notes that Gruszeczka's request to the circuit court for issuance of summons was file-stamped on May 14, 2009, more than 20 days after receipt of the Commission's decision. In Alliance's view, the circuit court therefore lacked jurisdiction to consider Gruszeczka's action for judicial review.

¶ 12   The interpretation of a statute is a question of law that we review *de novo*. *Branson v. Department of Revenue*, 168 Ill. 2d 247, 253-54 (1995). The primary rule of statutory construction is to ascertain and give effect to the intent of the legislature. *Phoenix Bond & Indemnity Co. v. Pappas*, 194 Ill. 2d 99, 106 (2000). The language used in the statute is normally the best indicator of what the legislature intended. *Id.* Each undefined word in the statute must be given its ordinary and popularly understood meaning. *Texaco-Cities Service Pipeline Co. v. McGaw*, 182 Ill. 2d 262, 270 (1998). Words and phrases must not be viewed in isolation but must be considered in light of other relevant provisions of the statute. *Midstate Siding & Window Co. v. Rogers*, 204 Ill. 2d 314, 320 (2003). In ascertaining the legislature's intent, if the meaning of an enactment is unclear from the statutory language itself, the court may look beyond the language employed and consider the purpose behind the law and the evils the law was designed to remedy (*Kunkel v. Walton*, 179 Ill. 2d 519, 533-34 (1997)), as well as other sources such as legislative history (*People v. Jameson*, 162 Ill.

2d 282, 288 (1994)). However, where the statutory language is clear, it will be given effect without resort to other aids for construction. *Kunkel*, 179 Ill. 2d at 534.

¶ 13 Circuit courts are courts of general jurisdiction and enjoy a presumption of subject matter jurisdiction, but such a presumption is not available in workers' compensation proceedings, where the court exercises special statutory jurisdiction, and strict compliance with the statute is required to vest the court with subject matter jurisdiction. *Kavonius v. Industrial Comm'n*, 314 Ill. App. 3d 166, 169 (2000). This court has consistently held that the timely filing of a request for issuance of summons and the timely exhibition of proof of payment for the probable cost of the record (both of which are necessary for commencement of a judicial review action under section 19(f)(1)) are jurisdictional requirements that must be strictly adhered to in order to vest the circuit court with jurisdiction. *Jones v. Industrial Comm'n*, 188 Ill. 2d 314, 320 (1999).[1]

¶ 14 Section 19(f)(1) of the Act, which deals with actions for judicial review of Commission decisions, provides, in pertinent part:

"(1) Except in cases of claims against the State of Illinois, in which case the decision of the Commission shall not be subject to judicial review, the Circuit Court of the county where any of the parties defendant may be found, or if none of the parties defendant can be found in this State then the Circuit Court of the county where the accident occurred, shall by summons to the Commission have power to review all questions of law and fact presented by such record.

A proceeding for review shall be *commenced within 20 days of the receipt of notice of the decision of the Commission*. The summons shall be issued by the clerk of such court upon written request ***, and the written request shall contain the last known address of other parties in interest and their attorneys of record who are to be served by summons. ***

***

In its decision on review the Commission shall determine in each particular case the amount of the probable cost of the record to be filed as a part of the summons in that case and no request for a summons may be filed and no summons shall issue unless the party seeking to review the decision of the Commission shall exhibit to the clerk of the Circuit Court proof of payment by filing a receipt showing payment or

---

[1]The question before the court is not answered by recognizing that the circuit court exercises special statutory jurisdiction in workers' compensation cases and that strict compliance with the jurisdictional requirements of section 19(f)(1) is required. The question for the court is *how* a party strictly complies with the time limit—by getting the requisite documents in the mail within 20 days or having them file-stamped by the circuit clerk within 20 days. This court requires strict compliance with Rule 303(a)'s time limit for filing a notice of appeal. *Mitchell v. Fiat-Allis, Inc.*, 158 Ill. 2d 143, 150 (1994). When this court held in *Harrisburg-Raleigh Airport Authority* that the mailbox rule applied to Rule 303(a), this court was *not* excusing strict compliance with the rule. Rather, the court was clarifying that a party strictly complies with the rule by having the notice of appeal in the mail within 30 days of final judgment.

an affidavit of the attorney setting forth that payment has been made of the sums so determined to the Secretary or Assistant Secretary of the Commission ***." (Emphasis added.) 820 ILCS 305/19(f)(1) (West 2008).

¶ 15    The question for this court is whether a proceeding for review is commenced when the request for summons is placed in the mail or when it is file-stamped by the circuit clerk. Unlike the appellate court, we do not believe that this question can be answered merely by consulting a dictionary. As the appellate court noted, "commence" means "to enter upon : BEGIN, START." Webster's Third New International Dictionary 456 (2002). This definition does not *resolve* the question; it *raises* the same one: Is a proceeding for judicial review of a Commission decision under section 19(f)(1) begun or started when the request for summons and the proof of payment of the probable cost of the record are placed in the mailbox, or when they are file-stamped by the circuit clerk? Moreover, unlike the appellate court, we are not at a loss to understand how a legal process can be begun or started when a party places the necessary documents in the mail. Indeed, that is the very essence of the mailbox rule.

¶ 16    A statute is ambiguous when it is capable of being understood by reasonably well-informed persons in two or more different senses. *Jameson*, 162 Ill. 2d at 288. Section 19(f)(1) may reasonably be construed both in the manner that Gruszeczka proposes and in the manner that Alliance proposes. The appellate court believed that if a statute uses the word "commence" in relation to a filing deadline, that necessarily means that the date the document is received by the circuit clerk controls. 2012 IL App (2d) 101049WC, ¶ 13. This is simply not true. Section 122-1(b) of the Post-Conviction Hearing Act (725 ILCS 5/122-1(b) (West 2010)), for instance, provides that a postconviction proceeding is "commenced" by filing a verified petition with the clerk of the circuit court, and this has always been interpreted to mean that a postconviction proceeding is "commenced" when a petitioner places the petition in the mail. *People v. Saunders*, 261 Ill. App. 3d 700 (1994); *People v. Johnson*, 232 Ill. App. 3d 882 (1992). Moreover, as we will discuss in detail later, the mailbox rule has already been held to apply to most documents filed with the circuit court. We conclude that "commence" in section 19(f)(1) is ambiguous.

¶ 17    As we noted above, where the language of a statute is ambiguous, we may consider other sources such as legislative history to ascertain the legislature's intent. *Jameson*, 162 Ill. 2d at 288; *Kunkel*, 179 Ill. 2d at 534. However, our research has not revealed the existence of any legislative material that would assist in resolving the issue before us. Alliance asserts that there is nothing in the legislative history that would indicate that a mailbox rule would apply. There is likewise nothing in the legislative history that would indicate that the mailbox rule would not apply.

¶ 18    Over 20 years ago, in *Harrisburg-Raleigh Airport Authority*, this court recognized that the modern policy and trend was to equate time of mailing with time of filing. In that case, the court construed Rule 303(a)'s requirement that a notice of appeal must be "filed with the clerk of the circuit court" within 30 days of final judgment. *Harrisburg-Raleigh Airport Authority*, 126 Ill. 2d at 339. This court noted that the policy of filing documents by mail was widespread, and that the trend in statutes and rules was to equate time of mailing and time of filing, "particularly with respect to appellate practice." *Id*. at 340-41 (citing Ill. S. Ct. R.

11 (eff. May 15, 1980); Ill. S. Ct. R. 373 (eff. Aug. 1, 1985); Ill. Rev. Stat. 1985, ch. 1, ¶ 1026(1)). Therefore, the court held that a notice of appeal, which is closely related to the appellate process because it confers jurisdiction on the appellate court, should be considered "filed in the circuit court" when placed in the mail. The court found that sound policy reasons supported this reading because it placed smaller firms on an equal footing with their larger competitors. *Id*. at 342. At the time, the court declined to say whether the same policy would apply to other papers filed in the circuit court. *Id*.

¶ 19    A fairly consistent body of precedent has developed in the appellate court regarding when the mailbox rule will be applied, and we find that these cases set forth a reasonable approach. As the appellate court majority noted below, the courts in *Kelly v. Mazzie*, 207 Ill. App. 3d 251 (1990), and *Wilkins v. Dellenback*, 149 Ill. App. 3d 549 (1986), held that the mailbox rule would not be applied to the filing of a civil complaint (*Kelly*) or a section 2-1401 petition (*Dellenback*). The appellate court majority very strongly implied that the result in both of these cases was based on the plain meaning of the word "commence" (see 2012 IL App (2d) 101049WC, ¶ 13), but that played no part in the analysis of either decision. Indeed, section 2-1401 did not at the time, nor does it now, even contain the word "commence" or any variation thereof. See Ill. Rev. Stat. 1985, ch. 110, ¶ 2-1401 (now 735 ILCS 5/2-1401 (West 2010)).

¶ 20    The real reason that the mailbox rule was rejected in both cases was summarized in *Kelly*:

> "Although a section 2-1401 petition, and not a complaint, was at issue in *Wilkins v. Dellenback*, 149 Ill. App. 3d 549 (1986), that case implicitly answers the question presented here. In *Wilkins*, the section 2-1401 petition was mailed within the two-year period but received by the clerk after the period had expired. In determining whether the petition was timely, the court stated:
>
> > 'Although the weight of recent authority evinces a policy favoring the acceptance of the mailing date rather than the receiving date of certain documents, such as a post-trial motion or a notice of appeal, as the filing date of those documents with the clerk of the circuit court [citations], this policy has never been applied to the filing of pleadings such as a complaint or a section 2-1401 petition.' 149 Ill. App. 3d at 553.
>
> > The court determined that, unlike the filing of a document in a pending action, the filing of a section 2-1401 petition is the initiation of a new action, and '[l]ike a complaint, it must be sufficiently pleaded to notify the opposition of the cause of action and must be filed within a certain period of time to avoid staleness.' (149 Ill. App. 3d at 554.) The court concluded that the actual filing date of a section 2-1401 petition is the date when it is received and stamped by the circuit clerk's office." *Kelly*, 207 Ill. App. 3d at 253.

¶ 21    *Kelly* went on to explain that a statute of limitations is also involved with the filing of a complaint, and that defendants have a right to rely on the certainty that a statute of limitations provides. Moreover, the court explained that the limitations period in the case under consideration was two years, and thus requiring parties to comply with the actual receipt rule

was not "an unwarranted burden." *Id.* at 254. *Kelly* distinguished *Harrisburg-Raleigh Airport Authority* on the basis that it involved a notice of appeal, which is " 'closely related to the appellate process.' " *Id.* (quoting *Harrisburg-Raleigh Airport Authority*, 126 Ill. 2d at 341).

¶ 22    Thus, the results in *Kelly* and *Wilkins* had nothing to do with the plain meaning of the word "commence." Rather, the courts drew a distinction between documents that: (1) were pleadings that commenced a new action and were subject to a statute of limitations; and (2) were continuations of a previous proceeding or were closely related to the appellate process. *Kelly* and *Wilkins* were both decisions of the Appellate Court, Second District, and that court later explained in *Pakrovsky v. Village of Lakemoor*, 274 Ill. App. 3d 515, 517 (1995),[2] that *Kelly* and *Wilkins* do *not* state the general rule; they state a narrow exception to the general rule: "Except for the filing of complaints and the filing of petitions pursuant to section 2-1401 of the Code of Civil Procedure (735 ILCS 5/2-1401 (West 1994)), the appellate court has consistently held that documents mailed to the circuit court within the requisite time period but received thereafter are timely filed." *Pakrovsky* involved whether the mailbox rule applied to the notice of a rejection of an arbitration award. The plaintiffs argued that the court should apply the *Kelly* and *Wilkins* rule because a notice of rejection of an arbitration award commences the action in the circuit court. The appellate court disagreed, explaining that the rejection of the award merely allowed the parties to go to trial. It was not the commencement of an entirely new cause of action, and there was no statute of limitations involved. Thus, because "the weight of authority clearly favors equating the mailing date with the filing date for court documents which do not commence a new cause of action," the "special circumstances" of *Kelly* and *Wilkins* did not apply. *Pakrovsky*, 274 Ill. App. 3d at 518.[3]

¶ 23    Alliance argues that *Kelly* and *Wilkins* apply here because circuit court review of a Commission decision is a "new action" with a "20-day statute of limitations." We disagree with this characterization and find that the *Kelly/Wilkins* test leads inescapably to the conclusion that the date of mailing should control when a party seeks judicial review of a Commission decision. Clearly, when a party seeks review of a Commission decision in the circuit court, the party is *not* instituting an entirely new cause of action. As this court explained in *Hartlein v. Illinois Power Co.*, 151 Ill. 2d 142, 157 (1992), the circuit courts have no original jurisdiction over workers' compensation proceedings where benefits are determined. Rather, the "role of the circuit court in compensation proceedings is *appellate only*, and is limited by section 19(f) of the Workers' Compensation Act." (Emphasis added.) *Id.*; see also *Scott Wetzel Services v. Regard*, 271 Ill. App. 3d 478, 481 (1995) (same). A review of the plain language of section 19(f) leaves no doubt that a proceeding for judicial review under that section is an appeal of the Commission's decision. Section 19(f) refers to

---

[2]Two of the justices who decided *Kelly* were also on the panel in *Pakrovsky*.

[3]Postconviction petitions are an exception to this approach, as the mailbox rule applies to them even though they commence new actions and are subject to a statute of limitations. Additional considerations apply to that situation, however, as prisoners have no choice but to file by mail and must deal with the vagaries of the prison mail system. See *Saunders*, 261 Ill. App. 3d at 704; *Johnson*, 232 Ill. App. 3d at 884.

-8-

the proceeding as a "proceeding for review," and it specifically states that the circuit court may "review all questions of law and fact presented by [the] record" and may "confirm or set aside the decision of the Commission." 820 ILCS 305/19(f) (West 2010). Thus, a request for summons under section 19(f) is how one commences an appeal of the Commission's decision to the circuit court. It is a continuation of the same action, and the request for summons is as "closely related to the appellate process" as the notice of appeal considered in *Harrisburg-Raleigh Airport Authority*.[4] Indeed, the request for summons is the functional equivalent of a notice of appeal.

¶ 24 The other concerns that *Kelly* listed are not present here, either. There is no issue with the other party lacking notice of the claim, because the matter has already been contested before the arbitrator and the Commission. There is similarly no issue with a lengthy statute of limitations. In *Kelly*, the court believed that a two-year statute of limitations should not be extended any longer because of "staleness" concerns, and the court stated that the opposing party had a right to the certainty that a statute of limitations provides. Clearly, there is no "staleness" concern when a party seeks circuit court review of a Commission decision, because a party has a mere *20 days* to do so. This is a full 10 days shorter than a party has to appeal an arbitrator's decision to the Commission (820 ILCS 305/19(b) (West 2010)), or to appeal the circuit court's decision to the appellate court (Ill. S. Ct. R. 303(a) (eff. May 1, 2007)). As Justice Stewart noted in his dissent below, applying the mailbox rule here would not in any way affect cases that have declined to apply the mailbox rule to the filing of original actions in the circuit court. 2012 IL App (2d) 101049WC, ¶ 24 (Stewart, J., dissenting, joined by Holdridge, J.). The appellate court majority stated that it found "no valid reason to deviate from the holdings or reasoning in either *Kelly* or *Wilkins*" (*id*. ¶ 13 (majority op.)), but that is precisely what it did.

¶ 25 The appellate court majority was also concerned that the filing deadline here was supplied by a statute and not a supreme court rule. In *Harrisburg-Raleigh Airport Authority*, this court was construing one of its own rules, and the appellate court stated that it was aware of no authority that would allow a court to construe a statute as containing a mailbox rule. *Id*. ¶ 12. That authority is readily available. The courts simply have not drawn a distinction between statutes and rules when applying the mailbox rule to filing deadlines.[5] See, *e.g.*, *People v. Tlatenchi*, 391 Ill. App. 3d 705 (2009) (motion to withdraw a guilty plea pursuant to Supreme Court Rule 604(d)); *Baca v. Trejo*, 388 Ill. App. 3d 193 (2009) (motion to vacate default judgment pursuant to section 2-1301(e) of the Code of Civil Procedure (735 ILCS

---

[4]At oral argument, Justice Burke asked counsel for Alliance whether the proceeding in the circuit court was an appeal of the Commission's decision. Although counsel continued to maintain that it was a new action, he agreed with Justice Burke that "in common parlance" it was an appeal.

[5]Both *Kelly*, 207 Ill. App. 3d at 254, and *Wilkins*, 149 Ill. App. 3d at 554, noted that they were construing statutes rather than supreme court rules. However, the Second District had previously construed a statute as containing a mailbox rule (*A.S. Schulman Electric Co. v. Village of Fox Lake*, 115 Ill. App. 3d 746 (1983)), and that court clearly no longer recognizes any such distinction between statutes and rules (*Baca v. Trejo*, 388 Ill. App. 3d 193 (2009)).

5/2-1301(e) (West 2006)); *Tolve v. Ogden Chrysler Plymouth, Inc.*, 324 Ill. App. 3d 485 (2001) (postjudgment petition for attorney fees); *Pakrovsky*, 274 Ill. App. 3d 515 (notice of rejection of an arbitration award pursuant to Supreme Court Rule 93(a)); *Johnson*, 232 Ill. App. 3d 882 (postconviction petition pursuant to section 122-1 of the Post-Conviction Hearing Act (Ill. Rev. Stat. 1991, ch. 38, ¶ 122-1 (now 725 ILCS 5/122-1 (West 2010)); *People v. Easley*, 199 Ill. App. 3d 179 (1990) (motion to reduce sentence pursuant to section 5-8-1(c) of the Unified Code of Corrections (Ill. Rev. Stat. 1987, ch. 38, ¶ 1005-8-1(c) (now 730 ILCS 5/5-4.5-50(d) (West 2010)))); *Board of Trustees of Southern Illinois University v. Department of Human Rights*, 190 Ill. App. 3d 644 (1989) (entry of appearance and answer); *A.S. Schulman Electric Co. v. Village of Fox Lake*, 115 Ill. App. 3d 746 (1983) (posttrial motion pursuant to section 2-1203 of the Code of Civil Procedure (Ill. Rev. Stat. 1981, ch. 110, ¶ 2-1203 (now 735 ILCS 5/2-1203 (West 2010)))); *Department of Conservation v. Baltimore & Ohio R.R. Co.*, 103 Ill. App. 3d 417 (1982) (notice of appeal of Illinois Commerce Commission decision to the circuit court pursuant to section 68 of the Public Utilities Act (Ill. Rev. Stat. 1979, ch. 111⅔, ¶ 72)). Thus, contrary to what the appellate court majority claimed, ample authority supports application of the mailbox rule when a filing deadline is supplied by statute.

¶ 26    The appellate court majority pointed to section 1.25 of the Statute on Statutes (5 ILCS 70/1.25 (West 2012)), which provides a mailbox rule for all documents filed with the state, as evidence that the legislature "certainly knows how to provide for such a rule when it desires to do so." 2012 IL App (2d) 101049WC, ¶ 14. The counter to that argument is that the same statute also shows that the legislature knows how to *preclude* application of the mailbox rule when it wants to. In 2011, the legislature amended the section of the Statute on Statutes relied upon by the appellate court to provide that:

> "Notwithstanding any other provision of law, neither a petition for nomination as a candidate for political office nor a petition to submit a public question to be voted upon by the electors of the State or of any political subdivision or district may be considered filed until it is received by the political subdivision, election authority, or the State Board of Elections, as applicable." 5 ILCS 70/1.25 (West 2012).

¶ 27    In none of the above-cited cases in which the courts construed statutes as containing a mailbox rule did the legislature respond by amending the statute to preclude it. The legislature is obviously aware that the courts have been construing statutes as containing the mailbox rule for decades, and has stepped in to preclude it only in the case of certain documents filed under the Election Code. It is quite possible that the legislature is comfortable with the widespread adoption of the mailbox rule by the courts and sees no need to specifically provide for it in every statute.

¶ 28    We note that the mailbox rule already applies at the first and third stages of the workers' compensation review process. Pursuant to *Harrisburg-Raleigh Airport Authority*, a party may rely on the mailbox rule when appealing the circuit court's decision to the appellate court. Moreover, the appellate court held in *Norris v. Industrial Comm'n*, 313 Ill. App. 3d 993 (2000), that a party may rely on the mailbox rule when seeking review of the arbitrator's decision before the Commission. Thus, in addition to being consistent with the existing legal framework for application of the mailbox rule, a decision in claimant's favor would bring

harmony and consistency to the workers' compensation review process, with the same rules applying at every stage of review. By contrast, Alliance advocates for a process in which the rules change at every step: first the party can rely on the mailbox rule, then he cannot, then he can do so again. We believe that if this is what the legislature intended, then the legislature needs to clearly set this forth in the statute. Absent such a clear directive from the legislature, we believe that allowing a party to rely on the mailbox rule when he appeals a decision of the Commission to the circuit court is the result most consistent with Illinois law.

¶ 29                                    CONCLUSION

¶ 30        For the reasons stated, the judgment of the appellate court is reversed, and the cause is remanded to the appellate court for consideration of the other issues raised by the parties.

¶ 31        Reversed and remanded.

¶ 32        JUSTICE FREEMAN, dissenting:

¶ 33        The majority holds that the mailbox rule applies when a party seeks judicial review of a Workers' Compensation Commission (Commission) decision in the circuit court pursuant to section 19(f)(1) of the Workers' Compensation Act (Act). According to the majority, a section 19(f)(1) proceeding for review is commenced when the necessary documentation is placed in the mail, rather than when it is received and file-stamped by the circuit clerk. I disagree with this conclusion and the reasoning underlying it. I would apply a different analysis and would conclude, contrary to the majority, that the mailbox rule does not apply here. I respectfully dissent.

¶ 34        Section 19(f)(1) of the Act, which deals with actions for judicial review of Commission decisions, provides, in pertinent part:

>        "(1) Except in cases of claims against the State of Illinois, in which case the decision of the Commission shall not be subject to judicial review, the Circuit Court of the county where any of the parties defendant may be found, or if none of the parties defendant can be found in this State then the Circuit Court of the county where the accident occurred, shall by summons to the Commission have power to review all questions of law and fact presented by such record.
>
>        A proceeding for review shall be *commenced within 20 days of the receipt of notice of the decision of the Commission*. The summons shall be issued by the clerk of such court upon written request ***. ***
>        ***
>
>        In its decision on review the Commission shall determine in each particular case the amount of the probable cost of the record to be filed as a part of the summons in that case and no request for a summons may be filed and no summons shall issue unless the party seeking to review the decision of the Commission shall exhibit to the clerk of the Circuit Court proof of payment by filing a receipt showing payment or an affidavit of the attorney setting forth that payment has been made of the sums so

-11-

determined to the Secretary or Assistant Secretary of the Commission ***." (Emphasis added.) 820 ILCS 305/19(f)(1) (West 2008).

¶ 35    In its analysis, the majority preliminarily notes the importance in workers' compensation cases of the "special statutory jurisdiction" conferred by the Act. "Circuit courts are courts of general jurisdiction and enjoy a presumption of subject matter jurisdiction, but such a presumption is not available in workers' compensation proceedings, where the court exercises special statutory jurisdiction, and strict compliance with the statute is required to vest the court with subject matter jurisdiction." *Supra* ¶ 13. Specifically, "the timely filing of a request for issuance of summons and the timely exhibition of proof of payment for the probable cost of the record (both of which are necessary for commencement of a judicial review action under section 19(f)(1)) are jurisdictional requirements that must be strictly adhered to in order to vest the circuit court with jurisdiction." *Supra* ¶ 13 (citing *Jones v. Industrial Comm'n*, 188 Ill. 2d 314, 320 (1999)).

¶ 36    The majority next provides a gloss on these assertions regarding "special statutory jurisdiction." In a footnote following the citation to *Jones*, the majority begins by stating:

"The question before the court is not answered by recognizing that the circuit court exercises special statutory jurisdiction in workers' compensation cases and that strict compliance with the jurisdictional requirements of section 19(f)(1) is required. The question for the court is *how* a party strictly complies with the time limit—by getting the requisite documents in the mail within 20 days or having them file-stamped by the circuit clerk within 20 days." *Supra* ¶ 13 n.1.

¶ 37    The second sentence presents a correct description of the question before this court: whether strict compliance is achieved by putting the necessary documents in the mail within 20 days, or by getting them file-stamped by the clerk within 20 days. However, this question raises a second one: What specifically constitutes strict compliance under section 19(f)(1) of the Act, as opposed to, say, strict compliance under this court's Rule 303(a)? The provisions themselves are clearly different. For example, Rule 303(a) deals with appeals *from* final judgments of the circuit court, while section 19(f)(1) applies to requests for judicial review *by* the circuit court.

¶ 38    In the second portion of the footnote, the majority attempts to merge the two. The majority cites *Mitchell v. Fiat-Allis, Inc.*, 158 Ill. 2d 143 (1994), for the proposition that this court requires strict compliance with Rule 303(a)'s time limit for filing a notice of appeal. And in *Harrisburg-Raleigh Airport Authority v. Department of Revenue*, 126 Ill. 2d 326 (1989), this court held that the mailbox rule applied to Rule 303(a). The majority assures us that in applying the mailbox rule to Rule 303(a), this court was *not* excusing strict compliance. "Rather, the court was clarifying that a party strictly complies with the rule by having the notice of appeal in the mail within 30 days of final judgment." *Supra* ¶ 13 n.1. The clear implication is that if the mailbox rule qualifies as strict compliance under Rule 303(a), it should qualify as strict compliance under section 19(f)(1). I disagree. The majority's argument here is unpersuasive.

¶ 39    Beyond this footnote and other initial matters (*e.g.*, setting forth relevant portions of the statute, stating canons of statutory construction), the core of the majority's analysis relies on

four cases, one from this court (*Harrisburg-Raleigh Airport Authority v. Department of Revenue*, 126 Ill. 2d 326 (1989)), and three from the Appellate Court, Second District (*Wilkins v. Dellenback*, 149 Ill. App. 3d 549 (1986); *Kelly v. Mazzie*, 207 Ill. App. 3d 251 (1990); *Pakrovsky v. Village of Lakemoor*, 274 Ill. App. 3d 515 (1995)). From these cases, the majority draws two conclusions: (1) the modern policy and trend is to equate time of mailing with time of filing, particularly with respect to appellate practice; and (2) our appellate court has fairly consistently applied the mailbox rule to documents that are continuations of a previous proceeding or are closely related to the appellate process, but not to pleadings that commence a new action, such as complaints or section 2-1401 petitions. The majority then cites two other cases,[6] as well as "the plain language of section 19(f)," and concludes "a proceeding for judicial review under that section is an appeal of the Commission's decision" (*supra* ¶ 23) and, as such, is subject to the mailbox rule. In concluding that the date of mailing controls, the majority acknowledges its reliance on a "fairly consistent body of precedent *** in the appellate court regarding when the mailbox rule will be applied." *Supra* ¶ 19.

¶ 40    A problem with this reasoning is that none of the four decisions relied on by the majority in the principal portion of the analysis involve the Act in any way. *Harrisburg-Raleigh Airport Authority*, for example, is a tax-exemption case, not a workers' compensation case. The main issue was whether, under section 19.20 of the Revenue Act of 1939 (Ill. Rev. Stat. 1985, ch. 120, ¶ 500.20), real estate leased to private individuals by an airport authority was exempt from taxation as property belonging to an airport authority and "used for Airport Authority purposes." More important, the mailbox-rule decision in *Harrisburg-Raleigh Airport Authority* (the court held the mailbox rule would apply) dealt with notices of appeal from the circuit court to the appellate court, not, as here, with requests for judicial review of a Commission decision by the circuit court. There was thus no reference to the special statutory jurisdiction exercised by circuit courts under the Act or to the compliance with prescribed conditions necessary for such jurisdiction to vest.

¶ 41    Similarly, the courts in *Wilkins* and *Kelly* held that the mailbox rule did not apply to the filing of a section 2-1401 petition (*Wilkins*) or a personal-injury complaint (*Kelly*), and the court in *Pakrovsky* held that the mailbox rule did apply to the rejection of an arbitration award in a property damage case. None of these decisions are workers' compensation cases. No mention is made of the Act.

¶ 42    If I were writing this opinion, I would take a different approach, focusing instead on workers' compensation cases from this court which specifically involve section 19(f)(1) of the Act. Because the particular question presented here is an issue of first impression for this court, there are no such cases directly on point. However, this court has considered other section 19(f)(1) issues, including the requirement that the party seeking judicial review exhibit proof of payment of the probable cost of the record. Decisions addressing this proof-of-payment measure are helpful in determining the mailbox-rule question presented here.

---

[6]*Hartlein v. Illinois Power Co.*, 151 Ill. 2d 142, 157 (1992), and *Scott Wetzel Services v. Regard*, 271 Ill. App. 3d 478, 481 (1995).

¶ 43    In *Moweaqua Coal Mining & Manufacturing Co. v. Industrial Comm'n*, 322 Ill. 403 (1926), the employer (Moweaqua) sought judicial review of an award to the claimant under the Workmen's (now Workers') Compensation Act. The employer filed a *praecipe* for a writ of *certiorari* (the statutory predecessor of the request to issue summons) in the circuit court on November 29, 1924, apparently within the 20-day statutory period, and the writ (summons) was issued on that day. However, the probable cost of the record ($25) was not paid until March 6, 1925. The circuit court granted the claimant's motion to quash the writ, and this court affirmed. In reaching that decision, this court explained that, absent complete compliance with the statutory conditions, the circuit court lacked jurisdiction.

> "The method of bringing before the circuit court for consideration the record of the Industrial Commission is purely statutory, and the court can obtain jurisdiction of the proceeding only in the manner provided by statute. [Citations.] The jurisdiction exercised by the circuit courts under the Workmen's Compensation act is a special statutory jurisdiction, and the parties seeking a hearing in the circuit court under this statute must comply with all the conditions prescribed. The statute says plainly that no *praecipe* for a writ of *certiorari* may be filed and no writ shall issue until the parties seeking the writ shall exhibit to the circuit clerk a receipt showing payment of the amount of the probable cost of the record ***. *** The language of the statute is plain and there is no room for construction. The clerk had no authority to issue the writ and it was properly quashed on motion." *Moweaqua*, 322 Ill. at 405.

¶ 44    This court reached a similar conclusion on analogous facts in *Peter H. Clark Lodge No. 483, I.B.P.O.E. of W. Elks v. Industrial Comm'n*, 48 Ill. 2d 64 (1971), where an arbitrator's award to the claimant was upheld by the Commission and confirmed by the circuit court. The claimant argued that the circuit court, though it approved the award, nevertheless was without jurisdiction to review it. The claimant contended, *inter alia*, that the employer (the Lodge) "failed, within the period allowable under section 19(f) ***, to exhibit a receipt for the cost of the record at the time the *praecipe* for the writ of *certiorari* was filed in the circuit court." *Id*. at 66. This court agreed, holding the circuit court lacked jurisdiction. The record demonstrated that the receipt was not exhibited to the clerk at the time the *praecipe* for *certiorari* was filed. "The receipt was filed on February 26, 1969, two days beyond the expiration of the statutory 20-day period, and the receipt itself shows that it was prepared by the Industrial Commission on February 25, 1969, which also was after the period for filing the *praecipe* had expired."*Id*. at 69. The court cited *Moweaqua* and other cases in stating that the jurisdiction of the court to review the award is "wholly statutory, and in the absence of complete compliance with the act jurisdiction of the subject matter is not obtained." *Id*. at 70-71.

¶ 45    This court reached a somewhat different conclusion in *Berry v. Industrial Comm'n*, 55 Ill. 2d 274 (1973), where the claimant sought judicial review of a Commission decision affirming the denial of compensation. The claimant's attorney sent a *praecipe* for writ of *certiorari* to the circuit clerk, who received it on May 26, 1972, the fifteenth day of the 20-day period. Also on that day, the attorney (1) forwarded to the Commission a check for $200 in payment of the probable cost of the record, and (2) forwarded a copy of the transmittal letter to the circuit clerk. On May 30, the last day of the 20-day period, the clerk's office

-14-

received the copy of the transmittal letter, and a deputy clerk called the Commission and confirmed the $200 had been paid. The deputy clerk then filed the petition for writ of *certiorari*. The employer moved to quash the writ on the ground that the claimant did not physically exhibit to the clerk a receipt for the probable cost of the record before the *praecipe* was filed. The circuit court allowed the motion and quashed the writ. This court reversed, concluding that "[u]nder the peculiar facts present in this case" the requirements of the statute were satisfied and the circuit court erred in quashing the writ. *Id*. at 277. Citing *Moweaqua*, the court noted that the purpose of requiring the exhibiting of the receipt was to coerce the *payment* of the costs of the record. "If the costs have been paid and the clerk has been satisfied that payment has in fact been made, the purpose of the statute has been fulfilled." *Id*. at 278. In *Berry*, before issuing the *certiorari* petition, the clerk received a copy of the letter from the attorney to the Commission transmitting the costs, and the clerk telephoned the Commission to verify that the costs had been received. This court observed "that the tendency is to simplify procedure, to honor substance over form, and to prevent technicalities from depriving a party of the right to be heard." *Id*. (citing *Republic Steel Corp. v. Industrial Comm'n*, 30 Ill. 2d 311, 313 (1964)). The court in *Berry* noted that *Moweaqua* and *Peter H. Clark Lodge* were distinguishable on the basis that in those cases it appeared the cost of the record was not paid within the 20-day statutory period.

¶ 46    Ten years later this court declined to extend "the rationale of *Berry*" in *Arrington v. Industrial Comm'n*, 96 Ill. 2d 505 (1983), where the Commission modified an award of compensation to the claimant, and the circuit court set aside that decision and reinstated the award. The employer (Arrington) argued the circuit court lacked jurisdiction to review the Commission's decision because the claimant failed to exhibit a receipt showing payment of the cost of the record as required by section 19(f)(1). Instead, the claimant's attorney timely filed an affidavit with the circuit clerk stating he had sent a check to the Commission to pay the probable cost of the record but had not received a receipt. On the basis of the affidavit, the clerk issued a writ of *certiorari*. Seven days later—one day after the 20-day period—the clerk received the receipt. This court vacated the circuit court's judgment, concluding the writ was wrongly issued and the circuit court had no jurisdiction to review the Commission's decision. The court acknowledged that the evidence ultimately showed the payment was made and the Commission's receipt was issued before the writ of *certiorari* was issued. The court nevertheless concluded that the affidavit, which was the only basis for the clerk's issuance of the writ within the 20-day period, was in itself "inadequate to demonstrate that the Commission had actually received payment *** before the writ of the circuit court issued." *Id*. at 510. The court acknowledged *Berry*'s aim of furthering substance over form and preventing technicalities from depriving a party of the right to be heard, but concluded "these objectives must be balanced against the statutory goal of ensuring that payment has actually been received prior to the issuance of the writ." *Id*. Notably, in concluding its decision, this court acknowledged the hardship that can result from strict compliance with section 19(f)(1) and "strongly suggest[ed] *** that the General Assembly seriously consider amending section 19(f)(1) to permit proof of payment to the Commission to be made by *affidavit of the attorney* or in some other suitable manner." (Emphasis added.) *Id*. at 512.

¶ 47    At the time *Arrington* was decided, section 19(f)(1) provided that "a receipt showing

payment" of the probable cost of the record shall be exhibited to the circuit clerk, but mentioned no other way of establishing proof of payment. Ill. Rev. Stat. 1981, ch. 48, ¶ 138.19(f)(1). In 1985, two years after *Arrington* was decided, the General Assembly amended the statute to provide, as it still does, that the party seeking judicial review "shall exhibit to the clerk of the Circuit Court proof of payment by filing a receipt showing payment *or an affidavit of the attorney setting forth that payment has been made* [to the Commission]." (Emphasis added.) Ill. Rev. Stat. 1985, ch. 48, ¶ 138.19(f)(1). See Pub. Act 84-981 (eff. Sept. 25, 1985).

¶ 48      This court took up the proof-of-payment issue again in *Jones v. Industrial Comm'n*, 188 Ill. 2d 314 (1999), where an arbitrator awarded the claimant "substantial benefits" and the Commission reversed the arbitrator's decision. The claimant's attorney received the Commission's decision on October 25, 1996, and sought judicial review under section 19(f)(1). On November 8, the fourteenth day after receipt of the decision, the attorney filed a request for summons with the circuit court, and the summons was issued the same day. On November 14, the twentieth day of the statutory period, the claimant's attorney filed an affidavit with the circuit clerk stating that $35 had been paid to the Commission for the probable cost of the record. The employer moved to dismiss, arguing the circuit court lacked jurisdiction because the summons was improperly issued prior to the exhibition of proof of payment, in violation of section 19(f)(1). The circuit court granted the motion to dismiss, the appellate court affirmed, and this court reversed. The court acknowledged that compliance with the statute is necessary for jurisdiction to vest, emphasizing the importance of the requirement of timeliness. The court stated: "[T]he timely filing of a request for summons, and the timely exhibition of proof of payment for the probable cost of the record, are jurisdictional requirements which must be strictly adhered to in order to vest the circuit court with jurisdiction ***." *Jones*, 188 Ill. 2d at 320. The court added that this "comports with one of the primary purposes of the workers' compensation law, which is to determine whether an employee is entitled to receive compensation for his or her injuries as quickly as possible." *Id*. at 320-21. Though acknowledging the claimant did not strictly comply with the sequence in which the required tasks were to be performed, the court noted that he did strictly comply with the timeliness requirement. "He filed his request for summons, and exhibited proof of payment for the probable cost of the record, within the 20-day period required by section 19(f)(1)." *Id*. at 324. The court concluded that, "under the particular facts of this case," the claimant satisfied the material provisions of the statute, and jurisdiction properly vested in the circuit court. *Id*. at 327.

¶ 49      The decisions in *Moweaqua*, *Peter H. Clark Lodge*, *Berry*, *Arrington*, and *Jones*, along with the statutory amendment following *Arrington*, are instructive. They illustrate efforts by this court and the legislature to strike a balance between strict statutory compliance, on the one hand, and *Berry*'s aim of simplifying procedure and furthering substance over form, on the other. They reflect, in the process, the relative importance of the section 19(f)(1) requirements, particularly with regard to the overall timeliness requirement versus the sequence in which the required tasks were to be performed.

¶ 50      In these cases, even when the sequencing requirement was being relaxed, the 20-day timeliness requirement was honored. For example, in *Jones*, which loosened the sequencing

-16-

requirement, the court nevertheless firmly asserted that "the *timely* filing of a request for summons, and the *timely* exhibition of proof of payment for the probable cost of the record, are jurisdictional requirements which must be strictly adhered to in order to vest the circuit court with jurisdiction." (Emphases added.) *Jones*, 188 Ill. 2d at 320. In *Jones*, though the claimant's compliance with the sequencing requirement was less than strict, there nevertheless was "no dispute that [he] initiated his appeal in the circuit court in a timely fashion." *Id*. at 324.

¶ 51    These proof-of-payment decisions, which stood firm regarding the timeliness requirement, provide support for the conclusion that under section 19(f)(1), a proceeding for judicial review of a Commission decision is commenced when the request for summons and the proof of payment of the probable cost of the record are file-stamped by the circuit clerk, rather than when they are mailed. Under the mailbox rule, the required documents could be mailed as late as the twentieth day, which necessarily would mean they would not reach the circuit clerk's office within the statutory period. Indeed, in the case at bar, the documents were mailed *within* the 20-day period but apparently took some 10 days to reach the circuit clerk, which was 4 days beyond the prescribed maximum. In such circumstances, the mailbox rule becomes, in effect, an extension of the 20-day period, undermining strict adherence to this jurisdictional requirement. See *Jones*, 188 Ill. 2d at 320.

¶ 52    Moreover, this conclusion—that an action for judicial review under section 19(f)(1) commences when the documents are received and file-stamped by the circuit clerk—comports with one of the primary purposes of the Act, which is "to determine whether an employee is entitled to receive compensation for his or her injuries as quickly as possible" (*Jones*, 188 Ill. 2d at 320-21). Under a mailbox rule, as noted, the time when the request for summons and proof of payment reach the circuit clerk is essentially subject to the vagaries of mail delivery, which runs counter to this statutory goal.

¶ 53    In sum, I would conclude that a proceeding for judicial review of a Commission decision under section 19(f)(1) of the Act is commenced when the request for issuance of summons and the proof of payment of the probable cost of the record are file-stamped by the circuit clerk. I would hold that the mailbox rule does not apply, and the circuit court therefore lacked subject matter jurisdiction to entertain Gruszeczka's action. I respectfully dissent.

¶ 54    JUSTICE BURKE joins in this dissent.