# Illinois Official Reports

## Appellate Court

---

**Continental Tire of the Americas, LLC v. Illinois Workers' Compensation Comm'n, 2015 IL App (5th) 140445WC**

---

| | |
|---|---|
| Appellate Court Caption | CONTINENTAL TIRE OF THE AMERICAS, LLC, Appellant, v. THE ILLINOIS WORKERS' COMPENSATION COMMISSION *et al.* (Curtis Oltmann, Appellee). |
| District & No. | Fifth District<br>Docket No. 5-14-0445WC |
| Filed | November 6, 2015 |
| Decision Under Review | Appeal from the Circuit Court of Washington County, No. 13-MR-9; the Hon. Daniel J. Emge, Judge, presiding. |
| Judgment | Affirmed. |
| Counsel on Appeal | Thomas H. Kuergeleis and Neil A. Giffhorn, both of Keefe & De Pauli, P.C., of Fairview Heights, for appellant.<br><br>T. Fritz Levenhagen, of Levenhagen Law Firm, P.C., of Swansea, for appellee. |
| Panel | JUSTICE STEWART delivered the judgment of the court, with opinion.<br>Presiding Justice Holdridge and Justices Hoffman, Hudson, and Harris concurred in the judgment and opinion. |

**OPINION**

¶ 1    The only issue raised in this workers' compensation appeal concerns the nature and extent of the claimant's injury to his left wrist. The claimant, Curtis Oltmann, worked as a labor trainer for the employer, Continental Tire of the Americas, LLC, at its manufacturing plant in Mt. Vernon, Illinois. He was involved in a workplace slip and fall accident that resulted in an injury to his left wrist. He filed a claim for benefits pursuant to the Illinois Workers' Compensation Act (Act) (820 ILCS 305/1 *et seq.* (West 2012)). An arbitrator found that the claimant sustained a 5% loss of use of his left hand as a result of the accident. The employer appealed the arbitrator's decision to the Illinois Workers' Compensation Commission (Commission). The Commission affirmed and adopted the arbitrator's decision. The employer appealed to the circuit court, and the circuit court confirmed the Commission's decision. The employer now appeals the judgment of the circuit court that confirmed the Commission's decision. The employer argues that the claimant failed to prove that he suffered any permanent partial disability as a result of the workplace accident. We affirm.

¶ 2                                         BACKGROUND

¶ 3    The parties do not dispute that the claimant suffered a workplace accident on January 31, 2012. He tripped and fell while taking trash to a dumpster, landing on his left hand and arm. Subsequent X-rays revealed a left wrist fracture. On February 1, 2012, an orthopedist, Dr. David Brown, examined the claimant, placed his arm in a splint, and restricted him to light duty. The claimant followed up with Dr. Brown on February 29, 2012. On that day, Dr. Brown opined that the claimant was at maximum medical improvement and released him to full duty work with no restrictions. Dr. Brown told the claimant to return to his care if he had any further complications. The claimant returned to work full duty with no restrictions and has not sought any further medical treatment as a result of the fall.

¶ 4    At the December 6, 2012, arbitration hearing, the only disputed issue was the nature and extent of the claimant's injury. The claimant testified that after he reached maximum medical improvement, he returned to work earning the same rate of pay that he did prior to the accident and worked more hours. The week before the arbitration hearing, he worked 57 hours. He testified that he continued to experience pain from time to time in his left wrist. He told the arbitrator that when he is required to grab tires at work, he sometimes experiences pain in his left hand. In addition, when he carries something heavy, he can feel pain in his left wrist. After reaching maximum medical improvement, he played golf in the plant's golf league, which required him to play nine holes of golf one day per week. His team came in first place out of 16 teams in the league. He also played nine additional holes of golf each week. He testified that he sometimes has difficulties with his wrist when playing golf.

¶ 5    Dr. Brown testified that his initial examination of the claimant's left wrist revealed a dorsal triquetral avulsion, which is also called a chip fracture of the triquetral bone in the wrist. He described the chip as being approximately three or four millimeters and located on the back or top of the wrist. For treatment, he recommended a removal splint to rest the wrist and allow the swelling to go down and a home exercise program.

¶ 6    Dr. Brown testified that when the claimant returned on February 29, 2012, his wrist was doing great and was much better. Dr. Brown's examination of the wrist was negative, with

good range of motion and no tenderness. He discharged the claimant from active care with instructions to return if he had any further issues. He released the claimant to work full duty and opined that the claimant should not suffer any residual functional loss or difficulties with his left hand or wrist. He believed that there would be some soreness for some time, usually four to six months, but the soreness would go away. He noted that typically there was no long-term negative sequelae from this type of injury.

¶ 7 On March 15, 2012, Dr. Brown prepared a written report containing a disability rating based upon American Medical Association guidelines, which is required by section 8.1b(a) of the Act (820 ILCS 305/8.1b(a) (West 2012)). Dr. Brown opined in his report that there was no permanent impairment in the claimant's left extremity as a result of the chip fracture. He explained in the report that at the time of the last examination, the claimant was doing great functionally. He had full range of motion, no tenderness, and no impairment.

¶ 8 At the conclusion of the hearing, the arbitrator found that the claimant sustained a 5% loss of use of his left hand as a result of the accident, and the Commission affirmed and adopted the arbitrator's decision. The employer appealed to the circuit court, and the circuit court confirmed the Commission's decision. In the present appeal, the employer argues that the Commission's award of permanent partial disability benefits was improper.

¶ 9 ANALYSIS

¶ 10 The determination of permanent partial disabilities for workplace accidents occurring after September 1, 2011, is governed by section 8.1b of the Act, which became effective on June 28, 2011. Pub. Act 97-18, § 15 (eff. June 28, 2011). Section 8.1b(a) requires a licensed physician to prepare a permanent partial disability impairment report setting out the level of the claimant's impairment in writing. 820 ILCS 305/8.1b(a) (West 2012). The report must "include an evaluation of medically defined and professionally appropriate measurements of impairment that include, but are not limited to: loss of range of motion; loss of strength; measured atrophy of tissue mass consistent with the injury; and any other measurements that establish the nature and extent of the impairment." *Id*. Section 8.1b(a) requires the physician to use "[t]he most current edition of the American Medical Association's 'Guides to the Evaluation of Permanent Impairment' *** in determining the level of impairment." *Id*.

¶ 11 In determining the level of a claimant's permanent partial disability, section 8.1b(b) directs the Commission to consider: "(i) the reported level of impairment pursuant to subsection (a); (ii) the occupation of the injured employee; (iii) the age of the employee at the time of the injury; (iv) the employee's future earning capacity; and (v) evidence of disability corroborated by the treating medical records." 820 ILCS 305/8.1b(b) (West 2012).

¶ 12 In the present case, the arbitrator considered each of the factors contained in section 8.1b(b) and made the following findings: (i) that Dr. Brown found an impairment rating of 0% of the left wrist; (ii) that the claimant was employed as a labor trainer for the respondent and has continued in his usual and customary employment as of the trial date; (iii) that the claimant was 49 years old as of the date of loss; (iv) that the claimant was released to his regular job by his treating physician and continues to work in that position as before the incident; and (v) that the claimant described some minor residual symptoms in the wrist.

¶ 13 Despite Dr. Brown's 0% impairment rating, the arbitrator found that the claimant sustained a 5% loss of use of his left hand as a result of the accident. The arbitrator stated that he

determined the nature and extent of the claimant's injury by considering "the totality of the evidence adduced."

¶ 14     In the present appeal, the employer argues that, by adopting the arbitrator's decision, the Commission misinterpreted section 8.1b of the Act. The employer argues that, as a matter of law, the claimant's request for permanent partial disability should have been denied because he did not present a physician's report pursuant to section 8.1b(a) that would support a finding of a permanent partial impairment. The employer also argues, alternatively, that, under the manifest weight of the evidence standard, the Commission failed to give proper weight to Dr. Brown's impairment report, the claimant's extremely limited treatment, and his return to full duty at his prior earning capacity. We disagree with each of the employer's arguments.

¶ 15     First, the employer asks us to interpret section 8.1b under a *de novo* standard of review and hold that the claimant was required under section 8.1b to submit a medical report in support of his disability. The employer emphasizes that the claimant did not offer any subsection (a) report that supported a permanent impairment; instead, the only report in the record is the report that it obtained from Dr. Brown, which contains a 0% impairment rating. Therefore, the employer argues that we must reverse the Commission's award as a matter of law under a *de novo* statutory interpretation of section 8.1b of the Act.

¶ 16     Issues involving the interpretation of a statute present questions of law that we review *de novo*. *Gruszeczka v. Illinois Workers' Compensation Comm'n*, 2013 IL 114212, ¶ 12, 992 N.E.2d 1234. "The primary rule of statutory construction is to ascertain and give effect to the intent of the legislature." *Id.* "The language used in the statute is normally the best indicator of what the legislature intended." *Id.*

¶ 17     The language of section 8.1b(b) requires the Commission to consider a report prepared by a physician that includes an opinion concerning the level of the claimant's impairment. The record in the present case establishes that the Commission considered Dr. Brown's impairment report in determining the claimant's permanent partial disability. The Commission's consideration of this report complies with section 8.1b's requirements. The statute does not require the claimant to submit a written physician's report. It only requires that the Commission, in determining the level of the claimant's permanent partial disability, consider a report that complies with subsection (a), regardless of which party submitted it. In addition, section 8.1b does not specify the weight that the Commission must give to the physician's report. Instead, section 8.1b(b) states that "[n]o single enumerated factor shall be the sole determinant of disability." 820 ILCS 305/8.1b(b) (West 2012).

¶ 18     Therefore, nothing within the statutory language of section 8.1b requires the Commission to automatically adopt Dr. Brown's reported level of impairment merely because the parties submitted only one subsection (a) report. To the contrary, the Commission is obligated to weigh all of the factors listed within section 8.1b(b) and make a factual finding with respect to the level of the injured worker's permanent partial disability with no single factor being the sole determinant of disability. The Commission in the present case properly followed section 8.1b(b)'s requirement by weighing Dr. Brown's report along with the other listed factors. Therefore, the Commission's award does not violate the language of the Act as a matter of law.

¶ 19     Second, the employer argues, alternatively, that the Commission's decision is improper under the manifest weight of the evidence standard. We disagree.

¶ 20     It is the province of the Commission to determine disputed facts and draw reasonable inferences from the evidence in workers' compensation cases, and the Commission's "findings

regarding the nature and extent of a disability will not be set aside unless they are contrary to the manifest weight of the evidence." *Hiram Walker & Sons, Inc. v. Industrial Comm'n*, 71 Ill. 2d 476, 479, 376 N.E.2d 1014, 1016 (1978). In addition, "[i]t is well settled that because of the Commission's expertise in the area of worker's compensation, its findings on the question of the nature and extent of permanent disability should be given substantial deference." *Mobil Oil Corp. v. Industrial Comm'n*, 309 Ill. App. 3d 616, 624, 722 N.E.2d 703, 709 (1999). A decision is against the manifest weight of the evidence when the opposite conclusion is clearly apparent. *Stapleton v. Industrial Comm'n*, 282 Ill. App. 3d 12, 16, 668 N.E.2d 15, 19 (1996). The Commission's decision is not against the manifest weight of the evidence if there is sufficient factual evidence to support it. *Id*. A reviewing court should not overturn the Commission's findings simply because a different inference could have been drawn, nor should it substitute its judgment for that of the Commission. *Old Ben Coal Co. v. Industrial Comm'n*, 217 Ill. App. 3d 70, 84, 576 N.E.2d 890, 899 (1991).

¶ 21 Under the manifest weight of the evidence standard, we must give proper deference to the weight that the Commission gave to each of the factors listed in section 8.1b(b). There was sufficient evidence to support the Commission's findings with respect to each of the factors, and nothing in the record indicates that it gave improper weight to any one factor. Therefore, we cannot reverse its finding that the claimant sustained permanent injuries to the extent of 5% loss of use of his left wrist under the manifest weight of the evidence standard.

¶ 22 The Commission outlined its findings on all of the factors listed within section 8.1b(b), including a finding that the claimant had some minor residual symptoms in his wrist, including occasional pain in his left hand and some problems with his wrist when he worked around the house, played golf, or lifted something heavy. In its analysis, the circuit court correctly concluded that the claimant's reported symptoms are corroborated by Dr. Brown's opinion that it is "not uncommon to have some residual soreness for a time after this."

¶ 23 The accident occurred on January 31, 2012, and Dr. Brown opined that the claimant would have some soreness for four to six months after the accident. During his deposition testimony taken on September 25, 2012, he testified that the claimant's residual soreness should have resolved by that point. However, at the December 6, 2012, arbitration hearing, the claimant testified that he still had pain in his wrist at times. Prior to the accident, he never had any problems with his left wrist. Dr. Brown admitted during his testimony that the bone chip in the claimant's wrist had not reattached to the bone when he last saw him and that sometimes a bone chip will not reattach.

¶ 24 Although Dr. Brown opined that the claimant did not have any permanent impairment because of the accident, the weight to be given to his opinion as well as the conclusions and inferences to be drawn from the claimant's testimony and medical evidence are matters for the Commission to determine. Nothing in the record compels us to second-guess the Commission's factual findings with respect to the nature and extent of the claimant's disability.

¶ 25 CONCLUSION

¶ 26 For the foregoing reasons, we affirm the judgment of the circuit court that confirmed the Commission's decision.

¶ 27        Affirmed.